## STATE *vs.* ALBERT B. COLLINS.

### MAY 31, 1907.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1)  *Evidence.   Refreshing Recollection.   Search Warrants.*

A search warrant and the officer's return thereon are not only not the best evidence, but are not even admissible in evidence against a defendant upon a criminal complaint, although the officer might have used the return as a memorandum to refresh recollection.

(2)  *Intoxicating Liquors.   Criminal Complaint.   Evidence.*

Gen. Laws cap. 102, § 57, is an enabling statute, providing that the true date of sale need not be set forth in the complaint and that when an offence has been laid with a *continuando* proof of the offence in such case may be made within the times mentioned.   But upon a complaint charging the unlawful keeping for sale of intoxicating liquors on a certain day without a *continuando*, evidence may be offered as to the condition of things before and after the day charged but the evidence must be confined within reasonable limits, in the discretion of the court, subject to exception in .case of gross abuse, and testimony concerning the manner in which defendant used the premises occupied by him during the time covered by the evidence is admissible.

(3)  *Illegal Sale of Intoxicating Liquors.*

Upon a complaint for illegally keeping liquors for sale, a charge of the court that to warrant a verdict of guilty the jury must find that they were kept on the premises on the day alleged in the complaint; that evidence which was admitted tending to show that defendant on previous occasions kept liquors for sale and sold them was for the purpose of enabling the jury to draw the conclusion, if they saw fit, that they were on the premises on the day in question for the purpose of sale, but that if that were the case and defendant did not so keep them on the day in question the verdict should be not guilty, correctly states the law.

(4)  *Intoxicating Liquors.   Registered Pharmacists.   Licenses.*

Gen. Laws cap. 102, § 1, providing that no person, unless as thereinafter provided, shall keep or suffer to be kept on his premises or under his charge, for the purpose of sale, certain prohibited liquors, by its terms includes registered pharmacists.   By the terms of section 23, the burden of proving that he comes within the exceptions of section 1 is placed upon the defendant.   Section 52 as amended by Pub. Laws cap. 1223, of April 14, 1905, was a complete revocation of the authority previously conferred upon registered pharmacists to keep liquors for sale as such, and made a license to sell liquors a prerequisite to keeping them.   So, therefore, where it appeared on a complaint for illegal sale that no such license had been obtained, defendant failed to prove that he came within the exception.

CRIMINAL COMPLAINT.   Heard on defendant's exceptions, . and overruled.

DuBois, J. The defendant, after a verdict of guilty in the Superior Court, upon a complaint and warrant duly charging him with unlawfully keeping for sale intoxicating liquors in the town of Westerly on the seventh day of October, 1905, is now before this court prosecuting his bill of exceptions, based upon numerous alleged errors on the part of the justice who presided at the trial of the case in the Superior Court. The exceptions have been treated by the defendant under eight heads, or points, and for convenience this arrangement will be maintained in the present consideration of the same.

(1) The exceptions assembled under the first point relate to the admission of testimony of the complainant as to the liquors he found during a search made by him of the premises where the defendant was alleged to be doing business, and as to his testifying to the same after reference to a memorandum.

The defendant claims that the search warrant and the officer's return thereon constitute the best evidence, and that the same should have been produced, or a proper foundation laid, before the introduction of secondary evidence. The search warrant and the return thereon not only were not the best evidence, but they would not have been even admissible in evidence against the defendant at the trial. The complainant might have used the return as a memorandum to refresh his recollection instead of the memorandum he did use, but he was not bound to use any, and would not ordinarily be permitted to use any, until he had stated to the court that it was necessary to refresh his recollection. See *State* v. *Costa*, 78 Vt. 198, 203. The exceptions in this group must therefore be overruled.

(2) The second point relates to the admission of the testimony of witnesses as to empty bottles being found in a lane or driveway adjoining the store of the Albert B. Collins Drug Company, and to the going in and coming out of the store by people with packages; and to the temperate or intemperate condition of such people during the period of time from June to October, in the year 1905. The defendant objects that the offence is not laid with a *continuando*, but is charged as of a certain day; that the search was made on that day, and that the

admission of testimony as to what happened during the several months preceding the day laid in the complaint was contrary to law. The defendant also claims that Gen. Laws cap. 102, § 57, limits the proof to the times mentioned in the complaint. The object of the section is not to limit, it is to extend. It is an enabling statute. It is expressly provided therein, among other things: "it shall not be necessary to set forth the kind or quantity of intoxicating liquors . . . . or the time of the sale or manufacture thereof; but proof of the violation of any of the provisions of this chapter, the substance of which is briefly set forth therein, within the times mentioned therein, by the person complained of, shall be good and sufficient." This simply means that the true date of sale or manufacture need not be set forth, and that when an offence has been laid with a *continuando,* proof of the offence in such case may be made within the times mentioned.

" The offence charged, namely, of unlawfully keeping intoxicating liquor with intent unlawfully to sell the same in this Commonwealth on a certain day, is in its nature a continuing offence, and evidence is therefore admissible tending to show that the same condition of things existed both before and after the day named, for the purpose of showing the intent with which the liquors were kept on the day set forth in the complaint. Such evidence must be confined within reasonable limits." *Commonwealth* v. *Vincent,* 165 Mass. 19–20. The true rule is that the evidence in such cases must be confined within reasonable limits, and that such limits are usually left to the judicial discretion of the presiding justice, subject to exception in case of gross abuse. *Commonwealth* v. *Vincent, supra,* and cases cited.

In this case we are unable to say that this discretion was improperly exercised. There was evidence indicating a desire on the part of the defendant to sell liquor, for on June 24, 1905, he made application for a license to sell liquors in that town, which was denied by the town council on the tenth day of the following July. All the evidence introduced on this branch of the case related to the period between June 1st and

October 7th in the same year.  It was perfectly proper to admit evidence concerning the manner in which the defendant used the premises occupied by him for business purposes during that time.  There was evidence that full bottles of Ballentine's ale and beer were found in the defendant's place at the time of the seizure, and that from twenty-five to forty barrels containing empty bottles bearing Ballentine's labels were found in the defendant's barn, headed up, and that they had shipping tags upon them marked "Ballentine and Company from Albert B. Collins, Westerly, R. I."  There was also evidence that within the period alluded to numerous empty, and apparently recently emptied, Ballentine beer bottles were found, at different times, in the driveway leading to the barn and shed used by the defendant and near to the back door of the shop wherein the seizure was afterwards made.  It was proper to admit such evidence in order that the jury might weigh the same in connection with the other evidence.  It is not contended that alone it would have been of much weight, but it was pertinent in the circumstances of the case.  No error was committed by the court in these respects, and the exceptions treated under this head must be overruled.

The third point relates to the refusal of the court to charge: "In order to find a verdict of guilty, the jury must find two essential facts: 1st, that the defendant kept the intoxicating liquors, etc., in his possession, on his premises, and under his charge; 2nd, that he did so with intent to sell the same without lawful authority."

The answer to the objection of the defendant is that the court had already sufficiently charged the jury upon the matter.

We have frequently decided that no exception lies to a refusal to charge in such circumstances. . The exception must therefore be overruled.

The fourth point embraces the thirty-fifth exception: "that the court erred in its modification to the defendant's fourth request to charge, which reads as follows:

"Fourth:  If the intoxicating liquors were in the possession

or under the charge of the respondent, as agent, officer, or employee of the Albert B. Collins Drug Company, he can not be found guilty for the acts of other agents, officers, or employees of said company, in unlawfully keeping for sale intoxicating liquors, without proof of knowledge of such unlawful keeping or proof of authority from him to them for such unlawful keeping."

The following is the modification to which objection was made:

" THE COURT: I grant that request with the same observation that I have already made—that if this corporation is put up here simply as a screen or a shadow behind which he may dodge to escape just prosecutions for his own violations of the law, then, gentlemen, the corporation can not screen or protect him. He is liable if the corporation is created for that purpose; if not, if created in good faith for the purpose of carrying on business in a legitimate manner, then I grant the request; but, gentlemen, you will take into consideration all the evidence in the case. Draw your verdict from the evidence which has been submitted to you and from the law which has been given to you by the court. Try to do justice between the defendant and the State. Do no injustice to the defendant, do no injustice to the State. If the defendant is guilty, have no hesitation in saying so; if he is innocent, have no hesitation in saying so."

There was no error in this modification. While it is true that there is no presumption that corporations are organized for illegal purposes, and while there is a fair presumption that all corporations are organized for legitimate objects, presumptions of this kind must always yield to evidence, and there was evidence touching the same—there was evidence of the uncontradicted statements of the defendant as to his past acts and present and future intentions concerning liquor selling and keeping, as follows: A witness, one Brundrett, testified that he had been appointed a special constable; that the defendant was acquainted with that fact and with him; that the witness was sweeping a stairway of the post office building, in the line of his employment, and had got down to the side-

walk and was brushing the rest of it, and the defendant came along to get his mail and had the following conversation with him: " 'Well,' he says, 'don't seem the town council are going to do much at raiding,' and I told him, 'Well,' I said, 'it is early yet,' I says, 'you keep on selling liquors, and,' I says, 'you may find it will be—that they will raid.' He told me the same thing: 'Pooh, I have sold them a good while and I will still sell.' "

Furthermore, as the Albert B. Collins Drug Company was a close corporation, in which the defendant had an interest of ninety-seven one-hundredths; as he was its president, treasurer, and general manager; as he signed all of its checks, dictated its policy, and had general charge and oversight of its business, he might well have said, without exposing himself to the imputation of plagiarism, in language nearly identical with the historic words of a certain royal personage: I am the corporation.

This exception is therefore also overruled.

The fifth point is to exception number 36, based on the refusal of the court to charge the following fifth request:

"Fifth: That there is no evidence to warrant any finding that the corporation was not organized in good faith to do the business described in the charter, and that there is no evidence to warrant a finding that it was organized to shield the defendant in doing any illegal business."

This request was immaterial. The defendant's innocence or guilt in no way depended upon the purpose for which the corporation was organized; furthermore, even if it had been organized for the purpose of doing a perfectly legal business, it nevertheless could have been used thereafterwards as a shield for an illegal business. A further objection to the request is that it calls for a ruling upon a question of fact which was properly left to the jury.

This exception must be overruled.

(3)   The sixth point covers exception thirty-seven, and relates to an alleged error of the court in charging that if intoxicating liquors had been sold on the premises prior to the date mentioned, there was a presumption that it continued, or if they

were kept for sale illegally on those premises prior to that time, that there was a presumption that the illegal keeping continued.   The defendant errs in stating that the court charged as above set forth, without qualification.   The court, however, did charge upon this point as follows:

"You must find, however, in order to return a verdict of guilty, that the liquors were kept on the premises on the 7th day of October, 1905.   It is so charged in the complaint, and the prosecution have elected that as the day on which they would go to trial as constituting the offence.   Evidence has been allowed to go in here of liquors being there on previous occasions, and of certain facts from which you might possibly be warranted in finding that sales had been made on previous occasions, for the purpose of enabling you, if you see fit to do so, to draw your conclusion that if the defendant kept liquors there, or sold liquors on prior occasions, why, possibly or probably, as you may see fit to draw the conclusion, he had these liquors on the day in question there for the purpose of sale. It was for that reason, not for any other reason, so that if you should find that the defendant, as a matter of fact, did keep liquors on these premises for sale on any other day than on the 7th of October, 1905, and that he did not do so on that day, your verdict should be not guilty.   The State has seen fit to confine itself to the 7th day of October, 1905, so, gentlemen, if you should find that the defendant kept liquors there, as charged in the complaint, for sale on the 7th day of October, 1905, you will return your verdict of guilty."

The charge given states the law correctly, and the foregoing exception is overruled.

The seventh point, or exception thirty-eight, relates to an alleged material misstatement of the evidence by the court in charging that "empty bottles were found outside the door in the back gangway or driveway, as the case may be, and that these bottles had been obtained full of liquors in the place, and that the empty bottles had been thrown out there."

In this the defendant again misquotes the court.   What the court did say is as follows:   "There is testimony here that glasses, bottles of liquor in large quantities, were kept in this

back room where these liquors were found, and it is argued to you that bottles, empty bottles were found, outside the door in the back gangway or driveway, as the case may be, and that these bottles had been obtained full of liquors in the place, and that the empty bottles had been thrown out there." The court did not state the fact but, stated that it had been argued to the jury that such was the fact. This exception is therefore overruled.

The eighth and last, point is that the verdict is against the law and the evidence.

The defendant argues as follows:

" The defendant claims that, under a correct construction of sections 1, 21, and 54 of the General Laws, he cannot be prosecuted under the provisions of section 21, but must be prosecuted under the provisions of section 54 as amended by chapter, 1223 of the Public Laws, passed at the January session, 1905.

" The evidence shows that the defendant is a retail druggist and registered pharmacist and has been such for many years.

"Section 1 of chapter 102 of the General Laws provides that no person shall keep or suffer to be kept on his premises or under his charge for the purpose of sale within this State any ale, wine, rum, or other strong or malt liquors or any mixed liquors a part of which is ale, wine, rum, or other strong or malt liquors *unless as hereinafter* provided.

"Section 21 of the same chapter provides that if any person shall keep or suffer to be kept on his premises or possession or under his charge for the purpose of sale, *in violation of the preceding sections of this chapter, or any of them,* any ale, wine, rum, etc., he shall be fined $20.00 and be imprisoned in the county jail 10 days.

"Under the provisions of said section 1, the persons lawfully keeping liquor for sale *as thereafter provided* are

"1,—Those persons having liquor licenses granted under the provisions of section 2.

"2,—Importers of liquor in original packages; section 9.

"3,—Sales by registered pharmacists on Sunday, and the penalty for violation of this particular section; section 25.

"4,—Manufacturers of cider, wine, or malt liquors for domestic use; section 44.

"5,—Manufacturers of wine from fruits and berries grown within this State; section 45.

"6,—Sales by persons authorized by law to sell medicines and poisons; section 52.

"Section 54 provides a penalty for unlawful sale by pharmacists on Sunday.

"Section 55 provides a penalty for unlawful sale by pharmacists on week day.

" The point the defendant makes is that section 21 provides a penalty for the unlawful keeping of liquors for sale in violation of the preceding 20 sections of said chapter, and does not apply to druggists or pharmacists for violation of section 52 of said chapter.

" By section 52 express authority to sell liquors without license is given to persons authorized by law to sell medicines and poisons (registered pharmacists). Having express authority to sell liquors, of course such persons have express authority to keep liquors for sale.

" The construction of said sections 1 and 21 and the exception of the different classes of persons from the provisions of said sections is the same now as it was when the sections were first enacted. The amendment of section 52 by chapter 1223 does not change the construction of said sections 1 and 21 and render pharmacists liable to be punished under provisions of section 21 when they were originally not within its scope.

" Pharmacists are in a class by themselves, and sections 54 and 55 provide penalties for any violation of the authority given them by section 52.

" Manufacturers or common sellers of liquor are in a class by themselves and are not punishable under section 20 or 21, but under the provisions of sections 42 and 43.

" Were it not for section 23 of chapter 102, which provides that no negative allegations of any kind need be averred or proved, it would be necessary in order to make a valid complaint against any person charged with unlawful keeping of liquors for sale contrary to the provisions of said section 1, to negative

all the exceptions referred to in said section by the words "unless as hereinafter provided;" and one of the classes of persons thus referred to are those known as registered pharmacists.

"A case where such negative allegations were used is *State v. Campbell,* 12 R. I. 147.

" Under the provisions of section 52 as amended by chapter 1223, a retail druggist or apothecary has a right to sell liquors or keep the same for sale; but if he does so without first obtaining a license from the town council he is liable to the penalty mentioned in said act. The fact that he does not first obtain (a license) to sell the liquors does not make him liable to the penalty imposed by section 21, which applies by its express terms to any violation of the preceding section.

" In the case of the *State* v. *Duggan,* 15 R. I. 410, pharmacists were held to come within the provisions of section 8, which provided a penalty for any person selling in violation of any of the provisions of the act, which was then the law.

" It will be noticed that section 1 of the law then under construction made no exception in favor of any person selling liquors or keeping the same for sale, and the sections relating to sales by pharmacists were all before said section 8, and that said section 8 provided a penalty for violation of *any* of the provisions of the act.

" In our present law section 1 contains the express exception as to persons "unless as hereinafter provided," and under section 52 pharmacists are expressly provided for.

" For any violation of the section of said chapter 102 following said section 21, it will be noticed that there is express provision for such violation; and section 21 can not be construed to apply to violations of the subsequent sections, for it is limited to violations of the preceding sections."

(4)    The argument is not convincing. It is to the effect that a retail druggist or registered pharmacist can not be convicted of liquor keeping, but can only be prosecuted for selling upon Sunday, under Gen. Law cap. 102, § 54, as amended by Pub. Laws cap. 1223 (Jan. Sess. 1905); or upon week days under the provisions of section 55 of said chapter.

Gen. Laws cap. 102, § 1, quoted by the defendant, provides that no person, unless as thereinafter provided, shall keep or suffer to be kept on his premises or under his charge for the purpose of sale within this State, certain prohibited liquors. This is broad enough to include, and by its terms does include, pharmacists and everybody else who shall violate the act in any way. See *State* v. *Duggan*, 15 R. I. 403-410. The exception is contained in the words " unless as hereinafter provided." Therefore, by the terms of the exception, the sections of the Statute enabling persons to lawfully keep liquor for sale are brought within the purview of section one as fully as though the same had been specifically set out and the persons so enabled had been named therein, and, as the defendant well argues, it would be necessary, in order to make a valid complaint against any person charged with unlawfully keeping of liquors for sale contrary to the provisions of section one, to negative all the exceptions referred to therein, including registered pharmacists, were it not for the provisions of section 23 of the chapter. But section 23 provides that: "No negative allegations of any kind need be averred or proved in any complaint under this chapter; and evidence of the sale or keeping for sale of any of the liquors enumerated in sections one, twenty, and twenty-one of this chapter shall be evidence that the said sale or keeping for sale is unlawful; but the respondent in any such complaint may show any license or authority to sell, or any other fact that would render a sale or keeping for sale lawful, by way of defence."

The burden of proving that he comes within the exception is thereby placed upon the defendant. It is true that the evidence showed that at the date of the complaint the defendant was a retail druggist and registered pharmacist and had been for some years prior to that time. And it is also true that by Gen. Laws cap. 102, § 52, authority to keep liquor was undoubtedly conferred upon the persons authorized to sell the same thereunder, that is, in quantities not to exceed one pint, for medicinal purposes only, and not to be drunk on the premises of the seller; but this did not confer a perpetual franchise upon such persons or give to them vested rights in

the matter which could not be recalled. Neither did it authorize a person to keep upon his premises a drug store in front and a dram shop in the rear. The authority was made specially subject to a revocation by the terms of section 56 of the same chapter, and was always subject to revocation by amendment or repeal. Section 52 was amended by Pub. Laws cap. 1223, passed April 14, 1905, as follows:

"SECTION 1. Section 52 of Chapter 102 of the General Laws of Rhode Island is hereby amended so as to read as follows:

"SEC. 52. Any retail druggist or apothecary who shall sell or keep for sale any ale, wine, rum, or other strong or malt liquors, or any mixed liquors a part of which is ale, wine, rum, or other strong malt or intoxicating liquors, without first obtaining a license, shall be sentenced on the first conviction to pay a fine of one hundred dollars and all costs of prosecution and conviction, or be imprisoned in the county jail for ten days. The finding of any liquors enumerated in this section upon the premises of any retail druggist or apothecary in quantities exceeding one-half gallon shall be considered evidence that the same is kept for sale. Nothing in this chapter shall be construed to prohibit the sale of alcohol for mechanical or artistic purposes only."

This was a complete revocation of the authority to keep liquors, and made a license to sell liquors a prerequisite to the keeping of them. It not only appeared in evidence that no such license had been obtained, but also that licenses were applied for by the defendant for himself and in behalf of the corporation, under the act, and that both were ultimately refused by the proper authorities. Hence the defendant failed to prove that he came within the exception. Therefore the verdict was not against the law. The exception taken upon this ground must be overruled. The verdict was not against the evidence. There was ample evidence, some of which has already been commented upon, and in addition there was evidence that the defendant kept barrels containing Ballentine's bottled beer, ale, and porter, in the cellar of his house, where he used to pack baskets containing one and one-half dozen or so daily, except Sundays, and take the same in his

buggy, to the store. This was testified to by a young man who said he left the employ of the defendant because he was required to assist him in doing this work.

There was also testimony relating to the seizure of liquors under a search warrant on the seventh day of October, 1905. The defendant was present and was served with a copy of the warrant. It appears that in the back room in the rear of the drug store there was a bar, to which was fastened a cork-puller; there were liquor glasses, a sink, an ice-box, and paraphernalia appropriate to a bar room, but not to a drug store; that in the ice-box there was porter, ale, and whiskey; that on a small bar there was whiskey and gin and brandy, Manhattan cocktail and Martini cocktail, and old Geneva gin; that there were seized at this time fifty bottles of lager beer, thirty-one bottles of ale, nineteen bottles of porter, one bottle of imported porter, eight quart bottles of whiskey, one quart bottle of Martini cocktail, two quart bottles of gin, one quart and a half-bottle of Holland Geneva gin, one quart bottle containing a small quantity of gin, one quart bottle containing a small quantity of Martini cocktail, one quart bottle containing a small quantity of gin, one two-quart bottle of brandy, one two-quart bottle of sherry wine, one two-quart bottle one-quarter full of sherry wine; that glasses were found which had recently been used for beer or ale and whiskey, as appeared from the foam and odor; that the defendant claimed that under the law he was entitled to two quarts of liquor, and that the officer accordingly left two quarts of it there.

Lewis B. Collins, the son of the defendant, claimed that all these intoxicating liquors belonged to him and intimated that the beer was brought there for him to drink, as appears from the following questions and answers: "211 Q. But you didn't drink a dozen or a dozen and a half bottles of beer every day, did you? A. That is not much of a job." "214 Q. Did you every day? A. I didn't every day. 215 Q. Did you drink one basket full of beer every day? A. Not every day. 216 Q. What was done with that you didn't drink? A. Might have gone the next day. 217 Q. How often did you drink a quart of whiskey? A. I didn't drink that every day,

not and work. 218 Q. Did you some days? A. Not in the store." Afterwards he claimed that a large quantity of the beer, liquors and mixed liquors which were seized had been set apart for him to use with his friends at Pleasant View Beach, at a house-warming, to celebrate the finishing of his summer house. The determination of the credibility and probability of these stories was strictly within the province of the jury, and we are not inclined to criticise their verdict. This exception is therefore overruled.

As all the defendant's exceptions have been overruled, the case is remanded to the Superior Court for sentence.

*James C. Collins, Jr.,* Assistant Attorney General, *Harry B. Agard,* for State.

*Clarence A. Aldrich and John W. Sweeney,* for defendant.

