STATE v. EDDIE BARR.

May Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed October 22, 1910.

*Intoxicating Liquors—Evidence—Intent—Materiality—Remoteness*
*—Judicial Notice—Beer.*

Whiskey, porter, and ale are taken to be intoxicating liquors.

In a prosecution for unlawfully keeping intoxicating liquor with intent to sell, evidence that when respondent's premises were searched large quantities of beer, whiskey, and porter were found thereon was admissible, regardless of whether such "beer" was in fact intoxicating, for the finding on respondent's premises of a large quantity of beer, along with whiskey and porter, tended to show that respondent intended to sell all those liquors, and that they were not kept for his own use.

In a prosecution for unlawfully keeping intoxicating liquors with intent to sell, evidence of a truckman that during a period of about three years previous to the seizure, at more or less regular intervals, he had removed from respondent's premises empty barrels similar to those filled with intoxicating liquor and found on respondent's premises was admissible to show intent.

The question of remoteness of evidence rests in the sound discretion of the trial court.

In a prosecution for unlawfully keeping intoxicating liquor with intent to sell, evidence *held* to show respondent's intent to sell liquors found in his possession.

In a prosecution for unlawfully keeping intoxicating liquors with intent to sell, evidence of respondent's stocking up with other liquors on a previous occasion was admissible to show his intent to sell the liquors in question.

INFORMATION for keeping intoxicating liquors with intent to sell without authority. Plea, not guilty. Trial by jury at the June Term, 1909, *Miles*, J., presiding. Verdict, guilty; and judgment thereon. The respondent excepted. The opinion states the case.

*Walter A. Dutton* and *M. G. Morse* for the respondent.

Unless the beer found on respondent's premises at the time

of the search and seizure, and the beer referred to in the Ballantine account were intoxicating, evidence in respect thereof was admissible. Beer is a general term that denotes various liquors, some of which are intoxicating and others not. *Comm.* v. *Gourdier,* 14 Gray, 390; *Blatz* v. *Rhorvach,* 116 N. Y. 450, 6 L. R. A. 669; *Nevin* v. *Landue,* 3 Denio 437; *Rau* v. *People,* 63 N. Y. 277; *State* v. *Sioux Falls Brewing Co.,* 5 S. D. 39, 58 N. W. 1; *Weis* v. *State,* 33 Ind. 204; *King* v. *State,* 79 Ind. 488; *Klare* v. *State.* 43 Ind. 483; *State* v. *Church,* 6 S. D. 89; *Schlosser* v. *State,* 55 Ind. 82; *DuVall* v. *City Council of Ga.,* 115 Ga. 813, 42 S. E. 813; *U. S.* v. *Ducournau,* 54 Fed. 138; *Hanberg* v. *People,* 71 Ill. 120, 60 Am. Rep. 549; *Netso* v. *People,* 24 Fla. 363; *Bell* v. *State,* 91 Ga. 227, 18 S. E. 288; *County* v. *Atlanta,* 79 Ga. 664; *Comm.* v. *Gavin,* 160 Mass. 523; *Comm.* v. *O'Kean,* 152 Mass. 584; *Comm.* v. *Blos.,* 116 Mass. 56.

*R. W. Simonds,* State's Attorney, and *J. Rolf Searles,* for the State.

The evidence as to the "beer" was admissible, regardless of whether it was intoxicating, as a large quantity of it was found together with a large quantity of whiskey, which is admitted to be intoxicating. The evidence as to the beer characterized the respondent's business, and tended to show that he was selling the liquors found in his possession. *Armstrong* v. *Noble,* 55 Vt. 428; *State* v. *Intoxicating Liquor,* 44 Vt. 208; *State* v. *Ktinski,* 78 Vt. 163.

Direct evidence of intent is seldom possible; that fact must be established by a chain of circumstances. *Stanton* v. *Simpson,* 48 Vt. 628; *Pierce* v. *Hoffman,* 24 Vt. 525; *Eastman* v. *Premo,* 49 Vt. 355; *Bradley Fertilizer Co.* v. *Fuller,* 58 Vt. 315; *McCasker* v. *Enright,* 64 Vt. 488.

HASELTON, J. This is an information for keeping intoxicating liquor with intent to sell the same without authority. On trial by jury the respondent was found guilty. Judgment was rendered on the verdict, and the respondent filed his bill of exceptions. The docket entries show that the respondent was sentenced and was released on bail.

The evidence on the part of the State tended to show that January 20, 1909, the respondent's premises were searched and that there were found thereon, and were seized and carried away, a barrel of whiskey in pint and quart bottles, a fifty-four gallon barrel partly full of porter, a fifty-four gallon barrel of beer, and five kegs of beer. One Cass, a truckman, subject to the respondent's objection and exception, gave evidence to the effect that during a period of about three years, ending with the seizure, he had carted away from the respondent's premises empty barrels similar in every way to those seized sometimes one or two a week, sometimes, perhaps, not any for a week, sometimes, perhaps, not any for two or three weeks.

Under objection and exception the State was permitted to show by Robert W. Simonds, Esq., that in January or February, 1907, he had in his hands for collection an account against the respondent in favor of Ballantine & Sons of New York; that about that time in answer to a notification, the respondent called on the witness, and examined an itemized statement of the account and admitted that he had had the goods represented by the statement and that the statement was correct. The statement consisted of a hundred and fifty-six items all of which the evidence on the part of the State tended to show represented beer. Most of these items related to an account which had accrued prior to December 16, 1905, on which date the respondent was tried and acquitted on an information charging him with the illegal keeping and the illegal selling of intoxicating liquor. The account, prior to that date, was not admitted in evidence, but the items that had subsequently accrued, twenty-three in number, were admitted in evidence in connection with the oral testimony.

The respondent was a witness in his own behalf and testified that at the time of the search in question there were seized and carried away from his premises a barrel about half full of ale and a half barrel of sterling ale that was sour, that had been there for a month. He was asked if on May 13, 1906, he received ten dozen XXX ale of Ballantine & Sons in the name of E Barr. He answered: "Well, I can't tell now, I know I received some from there, I don't know whether it was that one or not in my name." It is now urged in behalf of the respondent

that there was error in the admission of evidence in regard to beer. The evidence with regard to beer seized came in in connection with the evidence as to the seizure of quantities of whiskey and porter and of what the respondent denominated ale. The words "intoxicating liquor" as used in our statute, include spirituous or intoxicating liquor, malt liquors, lager beer, fermented wine, fermented cider and distilled spirits, and any beverage which contains more than one percent of alcohol by volume at sixty degrees fahrenheit. P. S. §5101. Whiskey, porter and ale are taken to be intoxicating liquors. *Shaw* v. *Carpenter*, 54 Vt. 155; *State* v. *Barron*, 37 Vt. 57; *Starace* v. *Rossi*, 69 Vt. 303; *State* v. *Lotti*, 72 Vt. 115.

In this case the question has been much discussed by counsel whether the word "beer" when used without qualification, or explanation, should be understood to mean a malt liquor and therefore, an intoxicating liquor under our statute. In some of the cases which we have examined, much learning, historical and literary, has been devoted to the discussion. Though the cases differ in their conclusions, there is in them not much difference in principle, for the words of a living language undergo mutations, old meanings are lost, new meanings and shades of meaning are acquired, words are broadened or narrowed in significance, sometimes within the limits of a generation, and words are given different shades of meaning in different states and localities. Courts formerly noticed the distinction between "strong beer" and "small beer", but the classification then thus recognized is now obsolete, or obselescent. In some states the courts now take judicial notice of the properties of persimmon beer, rice beer, and potato beer; while in this State there is no such common knowledge of these things as to warrant judicial notice of them. So far as the courts undertake the interpretation of common speech they must proceed without much reference to preconceived ideas of what words ought to mean. There can hardly be such a thing as a judicial precedent by which to determine the sense in which a word, reasonably capable of different meanings, shall be deemed to have been used by a witness. The question always will be: "What did he mean."

Here it seems evident that the State's witnesses designated

as "beer" that which the respondent called "ale". But we do not press this conclusion, nor are we here called upon to take judicial notice of what is meant by the word "beer" standing alone. Whiskey and porter, in large quantities, were found upon the respondent's premises, and the evidence of the finding of a large quantity of beer together with the large quantity of whiskey and porter had a tendency to show that the whole stock of drinkables, including the whiskey and the porter was kept with the intent to sell the same, an intent which it was necessary for the State to show. The whole story of the result of the search had a tendency to show that the respondent was keeping on hand drinks, not merely for his own use and to suit his own taste but that he was dealing, or was intending to deal, in all of these goods, and that to that end he was laying in a stock to meet all tastes, and that the whiskey and porter seized were intended for sale. In the same view that part of the evidence, including the exhibit, which related to the respondent's stocking up from Ballantine & Sons, limited and connected as it was in time, was properly received, and so was the evidence of the truckman with reference to the carting away from time to time from the respondent's premises of empty barrels similar to those taken at the time of the seizure. None of this evidence received reached back of the time of the prior judgment, and none of it was, as matter of law, too remote to be received.

The question of remoteness is in the sound discretion of the trial court, and there is nothing to indicate that that discretion was here abused.

The transcript of the case is not referred to, and the exceptions, all of which we have considered, relate, as already appears, solely to the admissibility of evidence.

*Judgment that there is no error in the proceedings, and that the respondent take nothing by his exceptions. Let execution be done.*