REED *v.* STATE
[No. 129, October Term, 1950.]

*Decided April 12, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON AND MARKELL, JJ.

*E. Milton Altfeld* and *Malcolm J. Coan* for appellant.

*Kenneth C. Proctor, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, Anselm Sodaro, State's Attorney for Baltimore City* and *William H. Maynard, Deputy State's Attorney,* on the brief, for appellee.

GRASON, J., delivered the opinion of the Court.

The traverser was indicted in the Criminal Court of Baltimore City for maintaining a disorderly house, tried before Chief Judge Smith, without a jury, convicted and sentenced, and the case is now here on appeal.

The facts of the case may be stated as follows: The traverser operated, for many years, a rooming house at 667 W. Franklin Street, Baltimore City. Captain Alexander L. Emerson, of the Baltimore City Police Department, received a complaint that soldiers were going to this place with lewd women. There also appears to have been a complaint by the Health Department. Around four o'clock on the morning of September 10, 1950, the Captain paid a call at this place. He rapped on the door and was admitted by the traverser to what we suppose is the office. There was a man with her. The Captain was authorized, under section 120 Article 16 of the Code of Baltimore City (1927) to visit such places as this and to inspect the register. "I told her that I

was Captain Emerson. She said; 'Yes, I know you.' I said: 'We have a complaint from the United States Army about venereal disease here with the soldiers.' She said: 'Yes, I didn't get word from the Army, but I did get notice from the Health Department that that had happened.' I said: 'Do you have any soldiers in here now?' She said: 'Not as I know of.' I asked her to let me look at the book. I looked at the book, or at the cards there (indicating)." It appeared from these cards, which represented the register that the Captain inspected, that on the night of September 9-10 three couples had been registered at different times in one room, and also on that night two couples had been registered at different times in each of four other rooms. It was apparent that the section of the code referred to had been violated. The Captain's suspicions were aroused. He testified: "I asked her to come on. She said to the man visiting with her to go with me. He went with me. Q. Didn't you brush by her and say I am going into these rooms? A. No, I said I wanted to see the rooms. She said to the man, you go with him. * * * I wanted to see if there was any soldiers there and to see if there was any wrong doings there. I saw the cards. After I saw several cards for one room and no departure, yes, then I wanted to see. I went to every room—" He denied that he was rough or rude or in any way coerced the traverser to permit him to visit the rooms, and his testimony is not contradicted. His tour of this rooming house disclosed a man and a woman in each of about twenty rooms. None were husband and wife and each couple had registered in a fictitious name and given a fictitious address.

It was due to the admission in evidence of the disclosure by Captain Emerson's testimony that the traverser contends she was unlawfully convicted and sentenced. She contends he should have first procured a search warrant.

We do not agree with the State that Emerson's testimony was admissible under the theory that he witnessed

the commission of a misdemeanor, but we do agree with the State that the traverser waived her right to object to a search of the premises.

We said, in the case of *Hubbard v. State*, 195 Md. 103, 107, 72 A. 2d 733, 735: "If the court is of the opinion that the accused freely and voluntarily consénted to the search, and there was no coercion or fear brought to bear upon the traverser by the police, the matter should be submitted to the jury, and it is then for the jury to say, on all the facts, whether the traverser waived her right she might have to object to the search."

In that case, as in this case, there is no evidence to show that the traverser objected to the search, or that any coercion or fear was exercised upon her by Emerson. She waived her right to object to a search.

*Judgment affirmed, with costs.*