### ADAMS, NELSON, AND TIMANUS *v.* STATE
### (Three Appeals in One Record)

[No. 162, October Term, 1951.]

134

*Decided May 9, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*E. Paul Mason, Jr.,* for appellant.

*Kenneth C. Proctor, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, Anselm*

*Sodaro, State's Attorney for Baltimore City,* and *William C. Rogers, Jr., Assistant State's Attorney,* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellants, a duly licensed physician, a registered nurse, and his secretary, were charged under eight indictments with the crime of abortion (Section 3, Article 27 of the Code), and under a ninth indictment with conspiracy to violate the statute. Trial before the court and a jury resulted in verdicts of guilty under the third and sixth counts of six of the indictments, under the third count of two of the indictments and under the first, fourth, fifth, sixth, seventh, eighth, ninth, tenth and twelfth counts of the conspiracy indictment. Motions for new trial were heard before the Supreme Bench of Baltimore City and overruled. In each case, appellants Adams and Nelson were sentenced to serve not more than one year in the Reformatory for Women, which sentences were suspended, and to pay a fine of $1,000. In each case appellant Timanus was sentenced to serve six months in the House of Correction and pay a fine of $1,000. Sentences in all cases were made concurrent.

The first point raised concerns the validity of the search warrants under which certain evidence was obtained from the premises where Dr. Timanus had his office. It is contended that the warrants were issued without a proper showing of probable cause, that the court erred in refusing to allow the defendants to take testimony with respect to the applications for the warrants upon a proffer to prove that substantially all the evidence set forth therein was obtained by "wiretapping", and that the warrant was improperly served.

Without attempting to set out in detail the activities and observations of the police narrated in the search warrant, which occupy nineteen printed pages of the appendix, it is sufficient to note that they cover a period between May 1, 1950 and August 11, 1950 during which the office was under observation on nine different oc-

casions and the home of the secretary, Miss Nelson, on four different occasions. In this period it was observed that visits were made to the office by at least fifty different women between the ages of twenty and forty, many of them from out of town. A number of these patients stayed overnight in the premises; many of them returned on the day following their initial visit. There was considerable activity over a period of two or three days, and at other times no activity at all. At times, apparently during normal business hours, there was no one in the office. Apparently, many of the appointments were made at the home of the secretary, Miss Nelson. In addition, the warrant contained a sworn statement given to the police on August 14, 1950 by a Mrs. Lenoir, concerning arrangements for an abortion performed on her by Dr. Timanus on March 23, 1950. This statement, together with the observations of the police, seems clearly sufficient to justify "a man of prudence and caution in believing that the offense" of abortion was being committed. *Wood v. State,* 185 Md. 280, 285, 44 A. 2d 859. Cf. *Goss v. State,* 198 Md. 350, 353, 84 A. 2d 57, 58.

The appellants argue that Mrs. Lenoir's statement, while it clearly shows that an abortion was performed on her, does not show that it was illegal, because she had previously consulted a Dr. Richardson, who put her in touch with Miss Nelson and gave her a slip addressed "to whom it may concern" stating "it was imperative that a curettage be performed" on her. The crime of abortion, as defined in Section 3, Article 27 of the Code, contains a *proviso* that "nothing herein contained shall be construed so as to prohibit * * * the production of abortion by a regular practitioner of medicine when, after consulting with one or more respectable physicians he shall be satisfied that the foetus is dead, or that no other method will secure the safety of the mother". But there is nothing in her statement to indicate that Dr. Richardson ever examined her or made a finding that an operation was necessary to secure her safety.

Apparently the only basis for his reference and the slip he gave her was her statement to him that she was pregnant and then unmarried. Nor is there anything in her statement to indicate that Dr. Timanus made such a finding, or that he ever saw or communicated with Dr. Richardson. If the affidavit is "sufficient on its face, it cannot be contradicted as a reason for quashing the search warrant". *Goss v. State, supra,* 198 Md. at page 354, 84 A. 2d at page 58; *Smith v. State,* 191 Md. 329, 334, 62 A. 2d 287, 5 A. L. R. 2d 386.

The contention as to the proffer to show that some of the evidence on which the affidavit was based was obtained by "wire-tapping" is without merit. Whether evidence obtained by such a method could be excluded under any circumstances may be open to doubt in the light of *Bratburd v. State,* 200 Md. 96, 88 A. 2d 446, just decided. In the instant case no evidence so obtained was offered by the State and the defendants' proffer to produce testimony to invalidate the warrant was properly refused. *Goss v. State, supra; Smith v. State, supra.* Moreover, we have held that a warrant should not be quashed merely because some of the evidence on which it is based was inadmissible, if it contains sufficient proper evidence to show probable cause. *Kapler v. State,* 194 Md. 580, 588-589, 71 A. 2d 860, 863; Cf. *Bratburd v. State,* 193 Md. 352, 357, 66 A. 2d 792. In the instant case there was such other evidence in the warrant.

The contention as to the service of the warrant is likewise without merit. The warrant was not shown to Dr. Timanus at the time of his arrest, but was shown to him when he was on his way to the police station. Miss Nelson testified that the police sergeant showed her his badge before the police entered the operating room. Dr. Timanus did not ask for their authority or object to their entry, but merely asked them to step out until his patient was made presentable. It might well be held that his actions constituted a waiver, as in *Reed v. State,* 197 Md. 540, 543, 79 A. 2d 852, 853 and *Hubbard*

*v. State,* 195 Md. 103, 106-107, 72 A. 2d 733, 735. In any event Section 306, Article 27 of the Code, as amended by Chapter 81, Acts of 1950, does not require the service or reading of the warrant or make failure to serve the warrant a ground for quashing it. Even under the federal statute, which requires service of a copy of a warrant, it has been held that this provision is substantially complied with by service after the seizure. *Nordelli v. United States,* 9 Cir., 24 F. 2d 665, 666.

The appellants next contend that the court erred in denying their motion that "the court interrogate each prospective juror, or permit counsel for the defendants to interrogate each prospective juror, as to the juror's religious or church affiliation, if any * * *". The court propounded to each panel the following question: "Is there any reason which will prevent any one of you from giving each of the defendants a fair and impartial trial and finding a verdict based only on the law and the evidence, such as your knowledge of the case or the parties or religious scruples or any other reason? If so, please raise your hand." One of the prospective jurors did in fact raise his hand, stating: "I don't approve of abortions." The court then challenged him for cause.

While we have found no Maryland case directly in point, it is well-established that in examination of prospective jurors on their *voir dire* the court may frame its own questions and not permit cross-examination by counsel, that the extent of the examination rests in the sound discretion of the court, and that the purpose of the inquiry is to ascertain "the existence of cause for disqualification and for no other purpose." *Emery v. Asher,* 196 Md. 1, 7-8, 75 A. 2d 333, 336; *Corens v. State,* 185 Md. 561, 45 A. 2d 340; *Cohen v. State,* 173 Md. 216, 195 A. 532; *Lee v. State,* 164 Md. 550, 165 A. 614; *State v. Welsh,* 160 Md. 542, 154 A. 51; *Handy v. State,* 101 Md. 39, 60 A. 452. It would obviously serve no useful purpose to interrogate prospective jurors about their religious or church affiliation unless such affilia-

tion would be a ground for disqualification. Religious or ethical beliefs as to the practice of abortion may range from a view that abortion, or even contraception, in any form or under any circumstances is morally wrong, to a view that the prevention of an unwanted child may be morally right, under circumstances not directly related to the mother's physical survival. But unless such beliefs would prevent an impartial consideration of the evidence and a proper application of the existing law, they would not disqualify. The court's inquiry was directed towards religious scruples with this proper qualification. We find no abuse of discretion. Cf. *State v. Maxwell,* 151 Kan. 951, 102 P. 2d 109, 128 A. L. R. 1315, *United States v. Daily,* 7 Cir., 139 F. 2d 7, and *United States v. Barra,* 2 Cir., 149 F. 2d 489, 491.

At the end of the whole case, the appellants moved for directed verdicts on the ground that the evidence was legally insufficient to warrant conviction. The motions were overruled. The appellants argue that although the evidence showed that abortions were performed on nine different women, there was no evidence of criminal intent, since it was shown that each patient was referred to Dr. Timanus by other doctors. But there was no evidence that in any case was the abortion performed for physical reasons, none of the written references mentioned any such reasons, and at least two of these were shown to be forgeries. Dr. Timanus did not testify and none of the witnesses testified there were any such reasons. Moreover, there was no evidence of consultation between Dr. Timanus and any of the referring doctors. We shall not attempt to define what would or would not amount to "consultation" under all circumstances. It is sufficient to state that it must be more than the mere receipt of a written slip or letter reading "for treatment", for "special treatment", "D. & C. recommended", without detailed findings or other communication. Both Dr. Timanus and his assistants were charged with knowledge of the limitations imposed by the law, and intent can be gathered from

their actions. Miss Adams testified that Dr. Timanus read the law to her when she was employed, although she also testified he told her his practice was not illegal. Without detailing the evidence, which is not printed in the appendix, we think the question was properly left to the jury. Cf. *Shelton v. State,* 198 Md. 405, 412-413, 84 A. 2d 76, 80 and cases cited.

The appellants contend that the court erred in its charge to the jury. The only objection to the charge was that the court did not read the whole statute. The court omitted that portion of the section dealing with contraception but quoted the portion which described the crime charged as to "knowingly use or cause to be used any means whatsoever for * * * the purpose of causing the miscarriage or abortion of any woman pregnant with child at any period of her pregnancy * * *", and quoted the proviso in the statute which we have heretofore quoted. We find no error in the omission to read the inapplicable portion.

The court also refused two sets of prayers, one predicated upon a lack of "intent to violate the law", and one on a finding that each defendant "acted in good faith in the belief that the abortions performed were legal and permitted under the Maryland law". It is true that intent is a necessary element of the crime. *Wilson v. State,* 181 Md. 1, 26 A. 2d 770; *Estep v. State,* 199 Md. 308, 86 A. 2d 470. But the intent which the statute requires is implicit in the word "knowingly". In the instant case it was virtually conceded that the operations were knowingly, and skillfully, performed for the express purpose of procuring abortion. The defense was that they were legal under the proviso. It would seem that the burden of proving justification as an affirmative defense was upon the defendants. Cf. *Tucker v. State, use of Johnson,* 89 Md. 471, 482, 43 A. 778, 44 A. 1004, 46 L. R. A. 181. "Good faith" is not a justification. If in fact the operations were performed without consultation and without the operator being "satisfied that the foetus is dead or that no other

method will secure the safety of the mother", a mere belief that the abortions as performed were legal would not be a legal excuse. Cf. *Hopkins v. State,* 193 Md. 489, 498-499, 69 A. 2d 456, 460. In the case cited it was held that the accused was not excused as a matter of law even where he acted upon the advice of counsel. Under the circumstances we find no error in the refusal of the prayers.

Finally, the appellants contend that the court erred in declining, on defendants' motions, to advise each female witness of her constitutional right to refuse to testify on the ground that it would tend to degrade or incriminate her. We have held, however, that it is not obligatory for the court to inform a witness of such right. *Raymond v. State ex rel. Younkins,* 195 Md. 126, 129-130, 72 A. 2d 711, 712. See also *Blum v. State,* 94 Md. 375, 382, 51 A. 26, 56 L. R. A. 322. The right, where it exists, is personal to the witness and neither the prosecution nor the accused has a right to object. In the instant case the right was waived when the witnesses did not make any such claim.

One witness, Miss Newbaker, was summoned but did not appear at the trial. A written statement she had made to Sergeant Maxwell on September 28, 1950 was read in evidence under a stipulation that if present, and if the court refused to allow her claim of privilege, she would testify in accordance with her statement. This stipulation was made after the court had overruled a motion that the court advise her of her constitutional rights, and counsel for the defendants had presented a paper executed by the witness two days before the trial, under affidavit, stating: "Now comes Linda Newbaker, a witness summoned to testify for the State * * * and refuses to testify on the grounds that her testimony would incriminate and degrade her * * *".

The defendants' motion to advise her of her rights was, of course, meaningless in the absence of the witness, and in presenting the paper executed by her they would have no standing in their own right, but only on behalf

of the witness. Doubtless they could have objected to the introduction of her statement on the grounds that they were entitled to be confronted by the witness and to cross-examine her. But these points were clearly waived by the stipulation. Whether the witness could make a claim of privilege *in absentia* is open to question. It has been stated that a witness cannot claim privilege as an excuse for not taking the stand. *Wharton, Criminal Evidence* (11th ed.) page 1982. If she had taken the stand and made the claim, the court would then have been in a position to determine whether "reasonable ground exists for apprehending danger to the witness from * * * being compelled to answer". *Chesapeake Club v. State,* 63 Md. 446, 457. It is not certain that the witness could be charged with any crime in connection with an abortion performed on her, nor was the court advised as to whether the state had offered her immunity. A witness "may not refuse to be sworn and tell what he knows, up to the point of his own involvement in crime. At that point he may claim his constitutional privilege and refuse to go further unless given full immunity." *Shushan v. United States,* 5 Cir., 117 F. 2d 110, 117, 33 A. L. R. 1040.

Without passing upon these questions, we think the court's action can be supported on a narrower ground. Her objection was to testifying, not to the use of her statement. We think the statement, voluntarily made without any claim of privilege, constituted a waiver of any use to which it could properly be put. While we have found no Maryland case directly in point, it was held in *Henze v. State,* 154 Md. 332, 343, 140 A. 218, that testimony given at a former trial, without any claim of privilege, could be used by the State in another trial of the accused. If this were not so, voluntary confessions could never be used where the accused declines to take the stand. Cf. 8 *Wigmore, Evidence* (3d ed.) § 2276 (b) (4). In *Smith v. United States,* 337 U. S. 137, 149, 69 S. Ct. 1000, 93 L. Ed. 1264 it was recognized that a voluntary statement may be used in a subsequent

trial on the theory of waiver, although in that case it was held that a claim had been made and sufficiently preserved at the time of the statement.

Finding no error in the rulings of the court, the judgments will be affirmed.

*Judgments affirmed, with costs.*