## LYLES *v.* STATE

[No. 67, October Term, 1953.]

*Decided January 14, 1954.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Irvin S. Friedman* and *Alex Steinhorn,* for appellant.

*Ambrose T. Hartman,* Assistant Attorney General, with whom were *Edward D. E. Rollins,* Attorney General, *John E. Raine, Jr.,* State's Attorney for Baltimore County and *Frank H. Newell, III,* Assistant State's Attorney, on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment and sentence on a criminal information for possession of alcoholic beverages for purpose of sale without a license. Article 2B, Section 3(a), 1951 Code. The trial was before the judge sitting without a jury.

On February 7, 1953, Officer Armond Elliott had in his possession two warrants for the appellant, Leon Lyles, sworn to by Elliott and Sergeant Charles Richardson on information which they had received. One warrant charged him with selling alcoholic beverages without a license and the other with having in his possession alcoholic beverages without a license. With Sergeant Richardson, Elliott arrested the appellant at Turner's Station in Baltimore County where he sold fruits and vegetables from a truck. Elliott testified that the officers asked Lyles for permission to search his truck and appellant gave permission to make the search. The appellant did not deny this permission. This search took place on Chesnut Street at Turner's Station in Baltimore County and later at the police station. In the front of the truck under the top of the windshield the officers found two half-pints of whiskey and some whiskey in a fruit jar. There were a total of four or five bottles found, all opened, and all containing some whiskey, the total amount of whiskey found being one and one-half pints. Sergeant Richardson testified that at the time of the search appellant claimed he had been approached by a man on the road from whom he "used to buy half gallon jars in quantities of twelve jars in a package," the cost of each jar being $2.30. He did not know who this man was. The officers further testified that appellant had been under observation since June 29, 1952,

and they had observed nothing incriminating in his actions, although several times they had seen him throw something "overboard" which he claimed was "bad" celery and lettuce. They also thought it unusual that a huckster would operate at Turner's Station at three o'clock in the morning. At the time of appellant's arrest at 2:40 P.M. on February 7, 1953, he had a truck full of fruits and vegetables, which he said was worth about $700.00. On the occasions when appellant was observed at Turner's Station in the early hours of the morning, he had never been seen to make a sale of fruits and vegetables. Sergeant Richardson said that on a previous occasion he had checked appellant for his huckster's license and found a fifth of whiskey in a Canadian Club bottle. At that time appellant told the officer that it was good whiskey and that he never drank "this rot gut stuff." Officer Elliott, while being questioned by appellant's counsel relative to the legality of the arrest and the securing of the warrant for arrest, testified that the police had received information from a Mr. McCullom that appellant had sold whiskey to him. However, McCullom did not testify in the instant case.

Appellant testified in his own behalf that he had sold fruits and vegetables at Turner's Station for twenty years. He said the only time he conducted his business as late as 3 A.M. was on Sunday mornings after working late on Saturday nights. He said the reason he was there so late on Saturday nights was because "we have to clean chickens and clean fish. A lot of people sit up and wait for us." He testified that the alcoholic beverages he had on the truck at the time of his arrest were for his personal use and all of the bottles had "a drink taken out of them". He also said the whiskey was not kept by him for sale, that he had never sold whiskey to anyone, and more particularly that he had never made a sale to McCullom. When asked on cross-examination why he had the whiskey in three or four different bottles, if it were only for his personal use, he answered: "Some

times when I go home and am in a hurry, I don't finish the one on the truck. Then I put another on to drink that." He further said when he was busy he did not like people to see him drinking. That was why there were two or three bottles on the truck as he did not finish one bottle all at the same time. When asked concerning the late hours of his business, he answered that his customers "have to stay up to pay for their vegetables." When asked where he obtained the whiskey, he stated that a man had stopped him on the road and asked him if he wanted some bootleg whiskey which he had in the back of his car. He did not know at that time that it was illegal to drink untaxed whiskey. He had purchased this bootleg whiskey four or five times. The largest amount purchased at any one time was two jars which he had always purchased from the same man whose name he did not know. Appellant admitted on cross-examination that he had been previously convicted of receiving stolen goods and placed on probation. He said he had the pint and a half of whiskey on his truck that day to drink, that he had gotten up about four o'clock in the morning, and was out all day in the cold. He testified that at the time the officer found the Canadian Club bottle on his person he had bootleg whiskey in that bottle and not Canadian Club whiskey.

Appellant claims that the evidence obtained as a result of the search of his truck was not admissible in evidence against him. He claims that the warrants were invalid because neither of the officers had any personal knowledge of the facts sworn to, nor did they even disclose at that time the name of the complainant. He was never charged in the information with possession of untaxed liquor, or with making a sale to McCullom on which the second warrant was based, nor was McCullom called as a witness by the State, although he was in court. The appellant contends that the warrant of arrest being invalid, the subsequent search was invalid and the liquor found in the search should have been excluded from evidence in accordance with his

motion. We find it unnecessary to pass on the point, for if we assume, without deciding, that the warrant was invalid, which we do not decide, there is uncontradicted testimony in this case that he freely and voluntarily permitted the search of his truck.

It has been held many times by this Court that a person cannot complain of a search and seizure to which he freely and voluntarily consents. The evidence obtained thereby is admissible in evidence. The weight of such evidence is a question for the jury or the trial judge sitting without a jury. *Blager v. State,* 162 Md. 664, 666; *Smith v. State,* 191 Md. 329, 341; *Lucich v. State,* 194 Md. 511, 516; *Hubbard v. State,* 195 Md. 103, 106-107; *Reed v. State,* 197 Md. 540, 543; *Robinson v. State,* 200 Md. 128, 88 A. 2d 310, 311.

Appellant further contends that there was not sufficient evidence in this case to prove that the one and one-half pints of whiskey which he had in his possession were held by him for the purpose of sale. The verdict of the court should not be set aside unless clearly erroneous, giving due regard to the opportunity of the trial court to judge of the credibility of the witnesses. Rule 7(c) of the Criminal Rules. But we think the verdict was clearly erroneous. It is obvious from the court's remarks that no reliance was placed upon the alleged sale to McCullom on a previous occasion, unsupported by any direct testimony. The court recognized the officer's statement as to what McCullom said as hearsay, and twice sustained objections to the statement on this ground. The court said, as to Lyles, "I don't believe a word that man said, excepting, he admitted he had the alcohol. * * * If he had all these bottles of whiskey, I don't believe he had it for his own private consumption." In short, the court drew an inference from the mere possession of the liquor, that the appellant had it for purposes of sale, although there was no direct evidence of a sale and the appellant swore that he had never made a sale.

It is of course true that possession, under some circumstances, may support an inference of a purpose to sell without direct evidence. *State v. Collins*, 28 R. I. 439, 67 A. 796; *Commonwealth v. Tay*, 146 Mass. 146, 15 N. E. 503; *Commonwealth v. Ahern*, 228 Mass. 547, 117 N. E. 827; *Jenkins v. State*, 188 Ind. 510, 124 N. E. 748; *State v. Barr*, 84 Vt. 38, 77 A. 914; *State v. O'Brien*, 101 Conn. 499, 126 A. 690. However, in none of those cases was the amount of alcoholic beverage in possession as small in quantity as in the instant case nor were the circumstances of the possession comparable to those here. In *State v. Bushey*, Maine, 138 A. 566, where the evidence was held sufficient to convict, the officers, upon entering defendant's lunchroom, saw two glasses on a shelf "half full of something." The accused, evidently for the purpose of preventing seizure, threw the glasses into a sink containing water. The officers retrieved the glasses which smelled strongly of alcohol and one of which contained a very small quantity. Also in the lunchroom was one drunken man and several others who had been drinking. That case is not helpful here.

The State also relies strongly on *Jenkins v. State*, *supra*, where the accused was observed boarding a streetcar with a pasteboard box. When arrested on the car, nine pints of whiskey were found on his person and in the pasteboard box. He explained his possession by saying that a person on the street had requested him to watch over the liquor until that person returned. The Supreme Court of Indiana in finding the evidence sufficient to prove that the possession of alcoholic beverage was for the purpose of sale, said: "From appellant's whole story the jury had a right to believe that he was giving a false explanation both as to the ownership and possession of the liquor. Then the next step to infer the unlawful intent seems to us rather easy. We think the evidence was entirely sufficient to show that appellant was the owner of the liquor in question, and that he had it with the intent to unlawfully dispose of it." Here the circumstances are very different. The State relies

on the fact that four or five opened bottles containing a total of one and one-half pints of whiskey were found on the truck. Appellant explains this by saying that he did not like people to see him drinking while selling vegetables and he some times put a bottle of whiskey on the truck before another had been entirely drunk. The total quantity found being so small, and distributed in open containers none of which was full or in a merchantable condition, destroys the force of the inference and actually corroborates the appellant's story. Moreover, the other circumstances were not incriminating. The officers never found any evidence to support their suspicion, although they had had him under observation for seven months. Evidently they accepted his story on the prior occasion when they found him in possession of about the same quantity of whiskey. The fact that he remained near Turner's station until late on Saturday nights, on some occasions, in connection with his perfectly legitimate huckster business, is quite immaterial. He was not charged with possession of untaxed liquor, so that his vague testimony as to where he obtained it, and that he did not know it was unlawful to drink untaxed liquor, is without significance. All of the circumstances, except the unsupported hearsay statement attributed to McCullom, who was not called by the State, were consistent with his story that the liquor found in the search was for private consumption. We think the State failed to prove a case of possession for the purpose of sale.

*Judgment reversed and case remanded for a new trial.*