IN RE WILL OF COLUMBUS SMITH.

May Term, 1914.

Present:   POWERS, C. J., MUNSON, WATSON, and HASELTON, JJ., and FISH, SUP. J.

Opinion filed October 19, 1914.

*Evidence—Testamentary Capacity—Sanity—Opinion Evidence —Preliminary Evidence—Opinion of Deceased Witness— Witnesses—Redirect Examination—Impeachment—Probate Appeals—Right to Jury Trial—Wills—Codicil—Execution —New Trial—Grounds—Misconduct of Judge—Costs.*

Where a witness on the issue of testamentary capacity testified to extensive conversations with testator shortly before the execution of the last codicil to the will, but did not detail the conversations, he was properly allowed thereupon to characterize the testator's questions as "very sensible."

Where a witness testified that he lived with testator at a hotel in Florida for several weeks in 1900, during which time he had many conversations with him on various designated subjects, and de-

scribed his appearance and habits, the subsequent question, "From what you saw of him in Florida during the winter and spring of 1900, and from the facts that you have testified to here * * * what do you say as to whether or not at the time he was a man of sound mind and memory and sane?" which on objection was amended by adding, "And from the facts as you have related them here in court," was not objectionable for that the word "and" introducing the amendment still allowed the witness to base his opinion on facts not related by him in court.

Where a witness testified that he had been successively teller and cashier of a designated bank where testator had an account, that witness had had conversations with testator and overheard conversations between him and another officer of the bank, and identified checks as signed by testator and some as filled out by him, that testimony was a sufficient basis for the opinion of the witness that testator was of sound mind during the period covered by the testimony.

Where a cashier of a bank in which testator had an account identified several checks that had gone through the bank in the usual course of business as those of the testator, and without objection gave his opinion that testator was of sound mind, and on redirect examination was shown a written order by testator that the bank forward him a New York draft for $1,000, to be charged to his account, error does not appear in allowing witness to testify that it was the custom of the bank to pay such orders, for it will be inferred on review and in support of the ruling that the cross-examination had proceeded on the theory that there was something unusual in the way the order was drawn.

Where a testator left to his wife a small part of his very large estate, on the issue of testamentary capacity it was proper to show that he took her into his confidence, and that they exchanged views about the matter.

Testimony that witness called at testator's house two or three times between 1900 and 1905, and that at least once testator said it would be a nice thing to leave his home for an Old Ladies' Home, as he in fact did in one of the codicils, was admissible, regardless of whether it occurred before or after the final codicil was executed, because if it occurred before, it tended to show that the instrument afterwards executed was his will, and if afterwards, it tended to show soundness of mind.

Testimony that witness had several conversations with testator, the details of which witness could not remember further than that they related to the buying of lumber and shingles, together with his identification of several checks as checks drawn by him and signed by testator, was a sufficient basis for the opinion of the witness that testator was of sound mind at the time of those transactions.

On the issue of testamentary capacity a document signed by testator was admissible to show the business testator was doing and how he was doing it at a time material to the issue, although the body of the instrument was in typewriting.

Where a witness, who was an officer of a bank in which testator had an account, testified to business transactions and conversations with testator at times material to the issue of testamentary capacity, but could not recall any exact conversation, he was properly allowed to give his opinion that testator was sane at those times.

Error does not appear in the exclusion of evidence, offered on the issue of testamentary capacity, that when witness was 13 years old, and while she was working for testator, his wife, one of the proponents of the will, stated that testator was responsible for the poor quality of food furnished "to the help," where the record does not show how many years have elapsed since witness was 13 years old.

Where contestant's evidence tended to show an oversight of testator and his business by his wife and the dependence of testator on her in business affairs, proponents were properly allowed to show in rebuttal that on one occasion, when testator was doing business with witness, and testator's wife entered the room and began some extraneous discussion, testator reproved her and asked her not to interfere, whereupon she left the room.

Where the first codicil to a will was executed in January, 1899, and one of the attesting witnesses to that codicil had died when the will and codicils were offered for probate, and it appeared that during the last years of his life, which closed in 1909, testator was of unsound mind, even if the fact that the deceased witness attested the codicil was evidence on the question of testator's sanity at that time, evidence that some time after the summer of 1904 testator lost his mind, and that at that time said deceased witness stated that testator had been out of his head for a number of years, was inadmissible.

Where testator's widow testified that there had never been a time before a designated time in 1904, when he was mentally unable to take care of his own business, a letter written by her to a physician in September, 1904, stating that, when testator became too mentally deranged to do any business she "had to go into the harness," and that she could look back to 1897, when their daughter died, and when testator gave up looking closely after business, except such as came under his immediate notice, and the attention of his Western affairs fell on her and gave her anxiety, and if testator as far back as 1897 had had a physician who understood his condition he would not have fallen into such an unhappy state, did not warrant the inference that the widow thought that testator was of unsound mind in 1897, and, therefore, did not tend to impeach her.

Generally there is no constitutional or statutory right to trial by jury in probate appeals, and where in such an appeal a will is propounded and issues are framed for a jury, their verdict and answers are merely advisory and may be disregarded if they do not satisfy the conscience of the court.

Where the contestants urged the trial court to disregard the findings of the jury that the testator was of sound mind when he executed the will, they thereby waived any claim of a constitutional right to a trial by jury on the ground that the will devised real estate.

Where the only surviving witness to a codicil testified to the circumstances connected with the execution thereof, the fact that she had no recollection of having seen testator sign the codicil was not fatal, where the circumstances to which she testified were such as to warrant the inference that the testator did sign in the presence of the witnesses, and that they signed, at his request, and in his presence, and in the presence of each other.

Where the jury in a will contest came into court after 26 hours' deliberation and asked whether an answer to the first of the submitted questions and a disagreement as to the others would be accepted, and the court, without answering, directed them to return and make further efforts to agree, and after two hours' further deliberation they returned with a verdict sustaining the will but finding against codicils, and were then discharged, whereupon the foreman was called into the consultation room of the judges, in the absence of the parties and their attorneys, and asked whether the answers to the submitted questions were the result of a compromise, to which he answered, "No," though that

proceeding on the part of the judges was irregular and improper, it was not prejudicial to contestants and not ground for a new trial.

Where before a petition for a new trial for alleged misconduct of the trial court in examining the foreman of the jury, after it had been discharged, the foreman made an affidavit showing that he had made statements to one of the petitioners' counsel, which made the bringing of the petition and the consequent investigation a matter affecting not merely the rights of petitioners but the ·administration of justice generally, costs are not to be imposed on petitioners, though the petition is denied on review.

APPEAL from a decree of the probate court establishing a certain instrument as the last will and testament of Columbus Smith. Trial by jury, on issues framed by the court, at the June Term, 1913, Addison County, *Taylor, J.,* presiding. The following four questions were submitted to the jury:

"Was Columbus Smith on the 30th day of December, A. D. 1897, at the time of the execution of the will in question of sound mind?

"Was Columbus Smith on the 16th day of January, A. D. 1899, at the time of the execution of the first codicil of said will of sound mind?

"Was Columbus Smith on the 12th day of February, 1900, at the time of the execution of the second codicil of said will of sound mind?

"Was Columbus Smith on the 21st day of March, 1903, at the time of the execution of the third codicil of said will of sound mind?"

The jury answered the first question in the affirmative and the other three in the negative. Thereupon the proponents filed a motion that the court accept the first special verdict, reject the others, and establish the will and codicils as the last will and testament of Columbus Smith; and the contestants moved the court to reject the first special verdict, accept the others, and adjudge that the alleged will and codicils were not the last will and testament of Columbus Smith. The proponents' motion was sustained, and that of the contestants denied, to all of which the contestants excepted. The contestants also brought to the May Term, 1914, of the Supreme Court a petition for a new

trial on the ground of the misconduct of the trial court, which was heard as stated in the opinion.

*Carney & Blake* and *Robert Simonds* for the contestants.

*W. B. C. Stickney* for the proponents.

HASELTON, J.   This was an appeal by the contestants from a decree of the probate court for the district of Addison allowing a certain instrument, with three alleged codicils thereto, as the last will and testament of Columbus Smith, late of Salisbury, who died November 10, 1909, at the age of 89 years, leaving an estate, conceded, for the purposes of the trial, to amount to $340,000.00, a substantial part of which was real estate.   The contestants were heirs-at-law of the testator.   The case was first tried on appeal in 1912 by jury upon issues framed by the court. This trial resulted in a disagreement.   Before the next term of court, that is, before the June Term 1913, the contestants set the case for trial by jury, and the proponents set it for trial by court.   Before the trial was commenced the proponents made a motion to have the case taken from the jury list and tried by the court.   This motion was overruled, the court however saying that it thought the case ought to be decided, and that in case of another disagreement it might take the case and decide it itself. The entire court was present throughout the trial and the evidence was taken as if addressed to the court instead of to both the court and jury.   The court adjudged that the several writings propounded as the last will and testament of Columbus Smith were such.   The contestants filed a bill of exceptions.

Melvin F. Morgan, a witness called by the proponents, testified to rather extensive conversations with the testator February 18, 1903, shortly before the execution of the last codicil.   He did not detail the conversations but stated the subject matter of them.   Under objection and exception he was then allowed to characterize the questions put by the testator saying "they were very sensible in my opinion."   This evidence was proper. It was like the testimony received in the Esterbrook Will Case, 83 Vt. 229, 234, 75 Atl. 1, to the effect that certain witnesses had noticed no peculiarities in the talk or actions of the testatrix there, and was like testimony received in an earlier case to the effect that the conduct and conversation of a testatrix

were strange or unnatural. *Fairchild* v. *Bascomb*, 35 Vt. 398, 417, 418.

Frank E. Howe, called by the proponents, testified that he lived with the testator at the same hotel in Florida for several weeks in the winter of 1900. This witness described the testator's appearance and habits, and said that the witness and the testator had extended conversations about a great many things including religion, politics and travel. He was then asked this question: "From what you saw of him in Florida during the winter and spring of 1900, and from the facts that you have testified to here upon this witness stand, what do you say as to whether or not at the time he was a man of sound mind and memory, and sane?" Objection was made on the ground that no foundation was laid for the question. The questioner then added "and from the facts as you have related them here in court." Subject to objection and exception the witness was allowed to answer. He said: "My judgment is that he was of sound mind." The contestants' argument is that because of the "and" which introduces the amendment to the question the witness was not confined to the facts related by him in court. But we think that notwithstanding the "and" the amendment to the question must have been understood as restricting the basis of the opinion to the facts testified to in court. We look further into the testimony of Mr. Howe. He then testified to afterwards meeting the testator on a railroad train and in Burlington and to their visits on those occasions, and he was asked for an opinion of the testator's soundness of mind at those times. The question did not strictly confine the witness to the facts testified to and was objected to on that ground. Thereupon the witness was reminded to base his opinion upon the facts that he had related in court. He gave the same opinion as before. The witness was then asked to give an opinion, as to the mind and degree of intelligence of the testator, based upon the conversations when in Florida, and at other times that the witness had testified to, basing his opinion upon what he had testified to in court. It is apparent that the witness supposed throughout that he was basing his opinions upon facts related to the jury, and a nice discussion of the grammatical effect of the use of the word "and" in one instance, where in strictness it should have been omitted, is uncalled for. If there was any doubt that the witness was basing his opinions upon facts testified to by him,

cross-examination would have shown how that was. "And" has several uses. The famous epitaph "Here lies a lawyer and an honest man," suggests to a wit, rather than a logician, that there are two men in one grave. We find no error in the examination of Mr. Howe.

F. W. Briggs was a witness in behalf of the proponents. He testified that he had been teller and cashier successively of the First National Bank of Brandon, that the testator had an account there and came there occasionally to make deposits. The witness testified that he had had conversations with the testator and had overheard conversations between the testator and Mr. Young of the bank, that the conversations were coherent but that he could not remember the subject of any of them. He was shown eight checks, all of which he identified as signed by the testator and some as filled out by him. Under objection and exception the witness gave an opinion, based on the facts testified to by him that the testator was of sound and sane mind during the period to which his testimony related. This was objected to on the ground that no foundation was laid. But the foundation was properly laid. That the facts upon which he based his testimony were not more extensive went to the weight of his opinion merely. *Foster's Exrs.* v. *Dickerson,* 64 Vt. 233, 244, 24 Atl. 253; *Cram* v. *Cram,* 33 Vt. 15.

Walter F. Scott, another witness for the proponents, testified that he had been for a long time cashier of the Brandon National Bank, that the testator had an account there and came to the bank occasionally. The witness identified several checks as those of the testator which had gone through the bank in the usual course of business. He gave without objection the opinion that the testator was of sound mind. This witness was then cross-examined, and thereafter was shown by the proponents an order or request wholly in writing by which the testator asked that a New York draft for $1,000 be sent him and charged to his account. The witness was inquired of if it was the custom of the bank to pay orders drawn upon it in the manner of the one shown him, and subject to objection and exception he answered: "We have always paid them." It is to be inferred in support of the ruling that the cross-examination had proceeded upon the ground that there was something unusual, something not in the usual course of business, in the way this order was

drawn by the testator, and in that aspect the testimony was proper.

Gertrude Sheldon, a witness for the proponents, was asked: "From what you saw of Mr. and Mrs. Smith—and what you heard Mr. Smith say in respect to the disposition of his property, can you tell whether or not Mrs. Smith knew what his intentions in that respect were?" The question was not objected to, but when the witness answered, "yes," the answer was objected to by the contestants, who moved to strike it out. But the court allowed the answer to stand and in this there was no error. The question and answer were preliminary and were of no importance taken by themselves. The witness then testified under objection and exception that she heard Mr. and Mrs. Smith talk about the disposition of Mr. Smith's property. The disposition of his property was such, a comparatively small part being left to his wife, that it was rather important for the proponents to show that he took his wife into his confidence and exchanged views with her about the matter, and this testimony tended to show those things.

Mrs. Smith testified that her husband knew that she was satisfied with the way in which he intended to dispose of his property after his decease, that she had property of her own, that their plans were mutual, and that in connection with their talk as to his disposition of his property they talked as to how she planned to dispose of hers. This testimony was taken under objection and exception by the contestants; and it is now claimed that it raised a collateral issue. But it did not, for, as has been said in commenting on the testimony of Mrs. Sheldon, it tended to explain why a comparatively small share of the testator's property was left to his wife, tended to show that he understood his obligations and relations and the business that he was about.

William H. Hammersley gave a deposition to the effect that he called at the testator's house two or three times between 1900 and 1905 and that once at least the testator said that it would be a nice thing to leave his home for an Old Ladies' Home, as it in fact was left if the codicils are given effect. Whether this was said before or after the final codicil was executed does not appear. If said before it had a tendency to show that the instrument afterwards executed was his will; if said after the execution of the final instrument, it was a circumstance tending

to show soundness of mind in that it indicated that he knew and carried in his mind the contents of his will. *In re Mason's Will,* 82 Vt. 160, 72 Atl. 329; *In re Wheelock's Will,* 76 Vt. 235, 56 Atl. 1013.

Henry F. Joy had, as he testified, several conversations, with the testator, the details of which he could not remember further than that they related to the buying of lumber and shingles. Mr. Joy identified several checks as checks that he drew and the testator signed, and under objection and exception gave an opinion, based on what he had testified to, that the testator was of sound mind at the times of the conversations and the check transactions. His opinion had a sufficient foundation and was properly received.

A document called proponents' exhibit 250 was received in evidence in connection with the testimony of Frank C. Dyer that it was signed by the testator and that Mr. Dyer witnessed the signature and took the testator's acknowledgement. The document was objected to because the body of it was typewritten. It was permissible to show the business the testator was doing and how he was doing it at times material to the issues, and it is not suggested that the time of this transaction rendered it immaterial. The fact that the body of the instrument was typewritten went only to the weight of this piece of evidence. This was not opinion evidence but one circumstance among many to aid the triers of the facts in forming an opinion. Mr. Dyer gave an opinion which was not objected to, and detailed other facts without objection.

George H. Young who was an officer of the First National Bank of Brandon testified to business transactions and conversations with the testator at times material to the issue. He testified to collecting rents for the testator on a house owned by the latter, to the fact of conversations with the testator concerning the house, to the testator's apparent understanding about his property, to the character of his talk, and to other matters. He could not recall any exact conversation. He gave an opinion that at the time when he saw the testator the latter was sane. The opinion was expressly based on the facts testified to by the witness. There was an objection and exception on the ground that there was no basis for the opinion, but the objection was without merit.

Mrs. Bertha Hall, a witness called by the contestants, testified that she worked at the testator's for several months when

she was thirteen years old, that the wife of the testator did the cooking for the hired help, and that the character of the food furnished the help was very poor. The witness was then asked if the testator's wife said anything to her about who was responsible for the quantity and quality of the food so furnished. The question was put under an offer to show that Mrs. Smith said it was Mr. Smith, the testator, who was responsible. The question was excluded. Although Mrs. Smith was a party proponent, so as to make her admissions admissible, we find no error in this ruling. There is nothing in the bill of exceptions to show how many years ago it was that Mrs. Hall, as a girl of thirteen, worked for the testator. The matter was so remote in character, and may well have been in time, as to make it discretionary with the court whether to receive or exclude the evidence.

John F. Weeks was called as a witness by the proponents, while they were putting in their opening case, and testified to extensive dealings with the testator and to his sanity. The contestants' evidence tended to show an oversight of the testator and his business by his wife and a dependence of the testator upon his wife in business matters. After the close of the contestants' evidence the witness Weeks was recalled and under objection and exception testified to an occasion when he was there on a matter of business with the testator and the testator's wife came into the room and began some extraneous discussion, whereupon the testator said to his wife: "Hattie, I wish you wouldn't interfere as Mr. Weeks and I are talking a business matter over," and that upon the testator's saying this she left the room. The objection to this was that it was not rebuttal. But the court ruled that it was, and, as we think, had sufficient grounds for so ruling in view of the evidence introduced by the contestants as to the relations of the testator and his wife.

The first codicil was executed in January, 1899, and the judge of probate for the district of Addison at a later time, Judge W. H. Bliss, was one of the attesting witnesses. He had died before the probate of the will, and the contestants offered in evidence the deposition of his widow, Mabel A. Bliss, certain portions of which were excluded subject to objection and exception on the part of the contestants. It is now claimed by the contestants that Judge Bliss being dead the fact that he signed the attestation clause of the codicil was evidence that he was then of

opinion that the testator was sane, and that the evidence of his widow was offered to impeach such opinion evidence. There was a living witness to the codicil in question, but we assume, with out deciding or intimating, that the fact that Judge Bliss attested the codicil was evidence on the question of the testator's sanity at that time. But on that assumption, the excluded evidence of Mrs. Bliss was properly excluded. It was conceded by all parties that during the later years of his life which closed in 1909 the testator was of unsound mind. The part of the deposition of Mrs. Bliss, which was excluded, read in connection with the rest of the instrument, which is referred to, shows no more than that sometime from the summer of 1904 to the death of the testator a guardian was appointed over him, and that before and after the appointment of the guardian, Judge Bliss said that he thought Mr. Smith was not in his right mind, was out of his head and had been a number of years. There was nothing to show when this was said except that it was somewhere between July, 1904 and the time of the testator's death, that is from five and a half to ten and a half years after the attestation of the first codicil. If Judge Bliss' attestation of the codicil is to be taken to express his opinion then entertained that the testator was at that time sane, the expressions which he used years afterwards, how many years afterwards we do not know, having no reference to the time of the attestation cannot be considered as impeaching.

The portions of the deposition that were excluded contained testimony by Mrs. Bliss as to similar expressions made by the Judge after the death of the testator. These must have been made more than ten years after the attestation of the first codicil, had no reference to that time, and were entirely without impeaching force.

Moreover we find nothing in the bill of exceptions that says or indicates that the excluded opinions of Judge Bliss were offered as impeaching evidence. Apparently they were not, and that they were inadmissible as evidence in chief is a proposition that requires no discussion.

The contestants excepted to the construction put by the court upon a certain letter of Mrs. Smith, the widow of the testator and one of the proponents. She testified that there was never a time prior to her husband's being taken to Burlington, in 1904, when he was unable to take care of his own business,

so far as his mind was concerned, that he dictated his letters to her, and that she wrote them, but that she saw not a particle of change in the testator's mental condition until he went to Burlington. Her testimony as to his mental capacity down to 1904 was very strong. She was then shown a letter, dated September 1, 1904 and addressed to Dr. Walter Berry, which she said was written by her and was true, and the letter was introduced in evidence. In it she speaks of the excellent effect Dr. Berry's medicine is having on her husband and of the good effect of the medicine given her. Throughout the letter she expresses anxiety that another physician, presumably the family doctor, should remain friendly and interested, realizing, as she says, that should anything unusual occur that needed the immediate attention of a doctor it would not be pleasant if the other doctor could not be called.

The part of the letter that the contestants claim was misconstrued or misunderstood by the court we quote, although it is somewhat awkward in construction.

"I shall have more mental rest now. When Mr. Smith became too mentally deranged to do any business. And I had to go into the harness. I can now look back to '97 the year our daughter died that in a way he gave up looking closely after business only that came under his immediate notice so came complication from neglect of attention of western affairs, which business fell heavily upon me, and gave me much anxiety. This is now over. But you will see if Mr. Smith as far back as '97 had a doctor that understood his condition he would not have fallen into such an unhappy state—He seems to rely upon all you have said to him and I trust will be himself again."

In announcing its conclusions the court referred to certain evidence and, among other things, to this letter and said:

"We think, after a careful examination of that letter, it does not afford the belief that she intended to state, in fact, she did not in terms state that as far back as 1897, Mr. Smith was mentally deranged. She states that, from some time which is not fixed in the letter, he became mentally deranged, so that she had to take over the business, and then she speaks of his having seemed to lose grasp to some degree upon the business as far back as shortly after the death of the daughter. But in the light of all the evidence as to what he did, in fact, do, down to and including the period, the 21st day of March, 1903,

we cannot find that her testimony is very seriously affected by that letter.''

This is what the contestants complain of. But we think they have no ground of complaint in this respect. They complain that the letter does not say that in the year the daughter died the testator commenced to lose his grasp to some degree upon business, but that it says that he then began ''to give up looking closely after business except what came under his immediate notice.'' The court was not attempting to quote the letter in these remarks; but to lose one's grasp to some degree upon business should seem to be as serious a matter as voluntarily to give up looking closely after business which one has others to transact for him. It appears that the court was sufficiently impressed with the matter of the letter.

As may be inferred from what has already been said, the court, in probating the will, made findings independent of the findings of the jury. In their original brief the contestants did not question the right of the court to take that course. But on the hearing here leave was granted to file a supplemental brief in vacation. Such a brief was filed according to the terms of the leave granted, and that is largely devoted to the course taken by the court in the respect just indicated.

The court submitted to the jury four questions. The first was whether the testator was of sound mind at the time of the execution of the will December 30, 1897. The other three asked for a finding as to his soundness of mind at the times of the execution of the respective codicils. The jury answered the first question in the affirmative and the other three in the negative. Thereupon the proponents moved the court to accept the first finding and reject the other three; and the contestants moved the court to reject the first finding and accept the other three. The court sustained the proponents' motion and overruled that of the contestants, and upon consideration of the evidence accepted the finding of the jury that the testator was of sound mind at the time of the execution of the will and found also that he was of sound and disposing mind and memory at the times of the execution of the several codicils, and adjudged that the will and codicils are the last will and testament of Columbus Smith.

The contestants took an exception to the action of the court in not disregarding the finding of the jury that the testator

was of sound mind at the time of the execution of the will. They also took an exception to the refusal of the court to accept the answers of the jury relating to the codicils, and they took an exception to the judgment allowing the codicils.

In probate appeals, in general at least, there is no constitutional right, and as our laws now are, no statutory right, to a trial by jury. And if in such cases, as is usually done when a will is propounded, issues are framed for the jury their verdict and answers are advisory merely, and if they do not satisfy the conscience of the court may be disregarded. This question has been so recently and fully discussed that we do not advance upon it here. *In re Peck's Estate*, 87 Vt. 194, 88 Atl. 568.

It is clear that in taking their exceptions the contestants took no different view of the law than that above stated, for they moved to have the finding of the jury that the testator was of sound mind at the time of the execution of the will set aside without any ground for claiming that there was not substantial evidence to sustain that finding. They do not argue their exception in that regard.

However, this will devised real estate, the contestants are heirs-at-law of the testator, and from this estate of several hundred thousand dollars would have received a matter of one hundred and fifty dollars more if the judgment of the court had followed the findings of the jury in all respects. So in their supplemental brief the contestants claim that as this will was in part a devise of real estate they had an absolute right, a constitutional right, to a trial by jury. The magnitude of this question is obvious enough to any one familiar with the history of the common law. But we do not think that the contestants raised the question below. It can hardly be supposed that in urging the trial court to disregard the finding of the jury that the testator was of sound mind at the time of the execution of the will the contestants were insisting upon the right to a trial by jury on the ground that the will was in part a devise of real estate. If they had such a right, and of this we say nothing, they must be understood to have waived it, and the argument of this matter in the supplemental brief is not considered as the discussion of a matter presented to the trial court.

As we have stated, the contestants took an exception to the judgment sustaining the will and codicils, and an exception to
18

the judgment allowing the codicils. Their claim under these exceptions, made for the first time in the supplemental brief, is that there was an absence of affirmative proof of the formal execution of the first codicil, that the only testimony as to the due execution of that codicil was that of Mrs. Seymour, the only surviving witness thereto, who had no recollection of having seen the testator sign. This is the codicil attested by Judge Bliss, and in taking this position the contestants seem to have abandoned the claim that the attestation of Judge Bliss was affirmative evidence which they had a right to impeach. But here, as hereinbefore, we do not consider the soundness of that claim, for we consider that circumstantial evidence is nevertheless affirmative evidence, and that though Mrs. Seymour had no recollection of seeing Mr. Smith actually sign, that was not necessary, and that her evidence tended to show the execution of the codicil by the testator in the presence of the witnesses thereto, and that the witnesses signed in his presence and in the presence of each other and under circumstances from which it was fair to infer that they signed at his request. *In re Claflin's Will*, 75 Vt. 19, 52 Atl. 1053, 58 L. R. A. 261; *In re Claflin's Will*, 73 Vt. 129, 50 Atl. 815, 87 Am. St. Rep. 693; *In re Welch's Will*, 46 Vt. 164, 168; *In re Blanchard's Will*, 32 Vt. 62; *Adams v. Field*, 21 Vt. 256.

The court was warranted in finding that the codicil was duly executed.

*The judgment of the county court is affirmed. Let the result be certified to the probate court.*

PETITION FOR NEW TRIAL. While this cause was pending in this Court a petition for a new trial was preferred by the contestants and filed in the original cause agreeably to rule 3 of the printed rules of this Court.

The matter of the petition was not, however, heard with the case made by the exceptions, but after the reading of the foregoing opinion was brought on for hearing and was heard, the Court being constituted as before, except that *Miles,* Chief Superior Judge, sat in place of *Fish,* Superior Judge.

The ground of the petition is an irregularity on the part of the trial court while it was considering the motions referred to in the main case, the motion of the proponents that the court

accept the first of the special verdicts and reject the other three, and the motion of the contestants that the court reject the first and accept the other three.

The relevant facts, those that appear from the bill of exceptions, which is referred to, and those that we find from the evidence submitted to us, are these: There had been a former trial of the case by a jury which had failed to agree. On this trial, after about 26 hours of deliberation, the jury came into court and asked if an answer to the first of the questions and a disagreement as to the others would be accepted. The court did not answer this inquiry, but told the jurymen that it was the opinion of the court that they should make further efforts to agree. The jury retired to their room and reached their special verdicts or findings after about two hours of further deliberation. While the court was considering the motions of the proponents and of the contestants regarding the answers of the jury to the questions submitted to them, it was thought advisable, in view of the short time that had elapsed between the jury's inquiry and an agreement by them upon all questions submitted to them, to ascertain whether or not they had compromised the matter, and, though the jury had been discharged from the consideration of the case, the foreman was called into the consultation room of the judges and asked if the answers of the jury were the result of a compromise. The foreman answered, "no." The testimony of the presiding judge is to the effect that no further information was asked for or received, and we so find. His testimony, as appears on the face of it, was given with entire candor. This communication between the court and the foreman of the jury was not in open court, counsel for the parties were not present and had no opportunity to be present, and the communication must be deemed an irregularity. Had the response of the foreman been different a grave question might exist. But the reply which he gave left the findings of the jury to speak for themselves without either augmentation or diminution of force.

The irregularity was clearly unintentional and inadvertent, as the contestants in effect concede, and as it resulted in nothing in any way calculated to prejudice the contestants, it does not present sufficient ground for a new trial. Harmless irregularity does not vitiate. *Beckwith* v. *Middlesex*, 20 Vt. 593; *State* v. *Bryant*, 21 Vt. 479; *State* v. *Camp*, 23 Vt. 551; *Peacham* v. *Carter*, 21 Vt. 515; *Downer* v. *Baxter*, 30 Vt. 467; *Dennison*

v. *Powers,* 35 Vt. 39; *Winslow* v. *Campbell,* 46 Vt. 746; *Wright* v. *Clark,* 50 Vt. 130, 28 Am. Rep. 496; *Lewis* v. *Crane,* 78 Vt. 216, 229, 62 Atl. 60; *Sheldon* v. *Wright,* 80 Vt. 298, 306, 67 Atl. 807; *Holt* v. *United States,* 218 U. S. 245, 250, 54 L. ed. 1021, 31 Sup. Ct. 2, 20 Ann. Cases 1138; *Moseley* v. *Washburn,* 165 Mass. 417, 43 N. E. 182; *Baxter* v. *Ray,* 62 Iowa 336, 17 N. W. 576; *McCutchen* v. *Loggins,* 109 Ala. 457, 19 So. 810; *Whittaker* v. *Browning,* 155 S. W. 1197.

Many of the above cases relate to irregularities in the conduct of jurymen; but since the court was here considering the evidence, it was bound, as is a jury, to make its decisions upon. evidence received in open court; and this the court manifestly did, and for that reason a new trial is denied.

In dismissing this petition we raise of our own motion a question as to costs. It sufficiently appears from the affidavit of the foreman of the jury that, before the petition was brought, he made such statements to one of the counsel for the contestants as made the bringing of the petition and the consequent investigation a matter affecting not merely the rights of the contestants, but the administration of justice. Such being the origin and nature of the proceeding, the disposition of the petition should be such as not, in any case, to deter inquiry, upon probable cause, as to whether the due course of the law has suffered detriment.

*Petition dismissed without costs.*