IN RE ESTATE OF JOSEPH D. CLOGSTON, ROSE GLENNIE,
APPELLANT.

May Term, 1918.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed January 13, 1919.

*Harmless Evidence—Witness—Impeaching Declarations—Cross-
examination of Party—Wills—Testamentary Capacity—
Undue Influence—Evidence—Matters of Record—Opinion
Evidence—Foundation—Exceptions Not Briefed Waived—
Adjudication of Testator's Incompetency—Instructions to
Jury—Prejudicial Statement.*

Where the import of a question is plain, an exception on the ground
of vagueness has no force.

The action of the court in striking out evidence that two absent
material witnesses were in the army was harmless, where the
fact that they were in France remained in evidence.

Declarations or acts by a witness, or omissions to speak or to act
when it would have been natural to do so, if a fact were as
testified to, may be shown by way of contradiction or impeach-
ment when they fairly tend to control or qualify his testimony.

A party to a suit can be cross-examined by the adverse party on any
subject to the controversy, whether he has testified in chief on the
subject or not.

In a son's contest of his father's will as being an unnatural one,
evidence of the attention and treatment given the father by his
sons and the effect the same had, or was calculated to have, on his
mind and feelings toward them, and of the relations existing be-
tween him and the chief beneficiary and the effect her care and
treatment of him had, or was calculated to have, on his mind and
feelings toward her, was admissible on the issue of mental capacity
and undue influence.

In such case, a witness was properly permitted to testify that she
never saw the contestant misuse his father or abuse him; such
conclusion being admissible where the facts are of such a char-
acter as to be incapable of being presented with their proper force
to anyone but the observer himself; and it being assumed, nothing

appearing to the contrary, that the witness stated so far as was practicable the facts and circumstances on which her conclusion was based.

Testimony that a witness did not visit the testator as much after a chief beneficiary went to live with him and took charge of his house as before, because she sometimes found the door locked and no one would open it, was admissible on the question of undue influence.

The adjudication of the incompetency of a testator and the appointment of a guardian for him by the probate court about a month after the execution of the will were matters properly for record, and could be proved only by the record.

In such case, where the probate court record showed that the testator introduced evidence opposing the appointment of a guardian, parol evidence that during the hearing in the guardianship proceedings the testator made some very loud talk, but witness could not say whether by way of objection or not, and after the evidence was in he was very calm and made no objection, was inadmissible as tending to show lack of testamentary capacity.

It was error to permit the probate court judge to give his opinion as to the testator's sanity based upon what he heard the testator say at the hearing in the guardianship proceedings, the substance of which he could not remember or repeat.

An exception to evidence that is favorable to the exceptant will not be sustained.

Where the contesting son offered evidence that he and his brother worked for the testator for nine years without pay on a farm subsequently deeded to them, and that their wages would have equalled the value of the farm, and it appeared that the brother was 17 years old when the testator bought the farm, it was error to exclude the question asked him in cross-examination, if his father was not entitled to four years of the nine years they were running the farm.

It is not error to refuse to strike out a responsive answer to a question not excepted to.

Exceptions not briefed are waived.

An adjudication of testator's incompetency about a month after the execution of a will is not *prima facie* evidence of his mental incapacity at the time of the execution of the will.

A general exception to a portion of a charge in part sound will not be sustained.

It is not error to refuse to charge on a subject which is properly matter of argument, and where there is no occasion for its being made prominent by the court.

An instruction that the jury had a right to consider all the evidence before them as to the testator's mental condition both before and after the execution of the will, because testamentary capacity may be inferred from a soundness or unsoundness of mind found to exist within a reasonable time before and after the time in question, was without error, it not appearing whether the substance of all the evidence on that question was shown by the exceptions.

Where the proponent of a will contested as being unnatural, had performed services for the testator both before and after the execution of the will, an instruction to the jury that the case was not a collection suit was error, as it was not germane to the case and was calculated to create prejudice against the proponent's case.

APPEAL from a decree of probate court disallowing an instrument as the last will and testament of Joseph D. Clogston. Pleas, defective execution, incapacity and undue influence. Trial by jury at the September Term, 1917, Washington County, *Slack, J.,* presiding. Verdict and judgment for the contestants. The proponents excepted. The opinion states the case.

*Theriault & Hunt* and *John W. Gordon* for the proponents.

*F. L. Laird* and *H. C. Shurtleff* for the contestants.

WATSON, C. J.    The proponents, in their opening case, called as a witness one A. C. Theriault, the attorney who drew the proposed will. His direct examination was confined entirely to what occurred in connection with, and at the time of, the execution of the will, his acquaintance with the testator, the frequency of his meeting and observing him in the street, and his participation in the transaction when the testator deeded his real estate to the proponent Glennie. He was not inquired of and did not testify respecting anything that occurred subsequent to the execution of the will, except as to meeting and observing the testator in the street, nor respecting the proceedings in regard to the appointment of a guardian over the testator, but did testify that in his opinion, based on his testimony, the testator, at the time the will was executed, was of sound mind. The

hearing in such proceedings was on October 15, 1915, about a month after the execution of the will. During the trial up to this time, no testimony had been received or offered with respect to those proceedings. Subject to exception on the ground of its being an improper way to introduce evidence of the guardianship, the witness in cross-examination was permitted to testify that about a month after the time when the will was executed the testator appeared in probate court and a guardian was appointed over him. The exceptions state that this question was preliminary to an inquiry concerning the speech and conversation of the testator on that occasion. However this may have been, the force of the exception is not easily seen in view of the fact that later the proponents introduced documentary evidence showing such appointment was made at that time.

Being further cross-examined, this witness was asked why he did not witness the will. Subject to exception on the ground of immateriality, he answered that he did not know of ever drawing a will where he witnessed it himself. He was then asked if it was not a fact that he did not witness the will in question because he wanted to reserve himself as a witness to testify to all the transactions surrounding it. Subject to exception on the ground of vagueness of the question, the witness answered that he never had any thoughts of it; that at the time of drawing the will he did not contemplate any trouble about it. The import of the question was plain enough, and consequently the exception saved has no force.

It appeared that proponent Glennie had two unmarried sons and a daughter who lived with her at the Clogston house where she was taking care of the testator, both before and after the execution of the will; that they were material witnesses to show the relations existing between the testator and this proponent; that they, as a part of the family, had in a measure cared for the testator; that the sons had shaved him, and the three had assisted him in many ways, and had associated with him in a social and family way during the time. The sons were not present at the trial, and for the purpose of explaining their absence a witness was asked concerning their whereabouts, and answered: "In France. Q. In France, they belong to the army, what is that? Ans. Yes." Whereupon the court ruled, subject to exception, that the fact that they belonged to the army be stricken out. We may assume this to have been an erroneous ruling,

and yet it is not believable that the proponents were harmed by it for the fact that the boys were in France remained in evidence.

It appeared that, after the contestant Elwin Clogston was appointed guardian of the testator, he employed proponent Glennie to remain at the testator's house and take care of him, which she did until his decease.   Mrs. Glennie and her daughter testified that Elwin, after his appointment as such guardian, choked the testator so that his throat was injured; that the skin on his neck was discolored, and ever afterwards in eating and swallowing he had difficulty with his throat.   In cross-examination Mrs. Glennie was asked, subject to exception as not in proper cross-examination, why she did not go to the probate judge about the choking, and ask that Elwin be removed as guardian and some suitable person be appointed in his place. She answered, ''Because I did not think it would do any good.'' The witness had not testified in direct examination as to why she did not go to the probate court with the matter.   It might fairly be argued that if her testimony touching such choking be true the most natural thing for her to have done, was to make complaint to the probate court, to the end that the guardian be removed and a new one appointed who would treat the testator kindly and gently as his age and physical condition required, and that her failure to make such complaint tended to discredit her testimony as to what took place.   ''Declarations or acts or omissions to speak or to act when it would have been natural to do so if the fact were as testified to, may be shown by way of contradiction or impeachment of the testimony of a witness, when they fairly tend to control or qualify his testimony.''   Foster v. Worthing, 146 Mass. 607, 16 N. E. 572.   And the witness, being a party to the suit, could be cross-examined by the adverse party on any subject to the controversy whether she had testified in chief on the same subject or not.   Swerdferger v. Hopkins, 67 Vt. 136, 31 Atl. 153.

The contestant called as a witness one Fannie B. Whitcomb who testified, among other things, that she never saw Elwin misuse his father, or abuse him.   This evidence was admitted subject to the exception of being a characterization and conclusion.   The contestant claimed that the proposed will was an unnatural one; that giving part of his property to proponent Glennie, as was attempted by the will, was contrary to the course

dictated by natural affection, had the testator in mind the natural objects of his bounty.  In support of this claim the contestant introduced evidence tending to show that great family affection existed between him and his father.    On the other hand, the evidence of the proponents tended to show the contrary to be true; that the father thought Elwin was trying to get control of his property, and that Elwin was unkind to and used personal violence toward his father; that both of the latter's sons had . neglected to care for him properly; that proponent Glennie and her family gave the testator care and comfort.  The proponents claimed that in these circumstances the will was a natural and beneficial disposition by the testator of his estate, having in mind his own comfort and welfare.  The contestant and his brother were men of mature years, having homes of their own at places distant from the testator's home.  The testator's household for some months before the making of the will and until his death comprised himself, the proponent Glennie, and her sons and daughters.

Whether the will was an unnatural disposition of the testator's property was for the jury to say on the evidence showing the circumstances prior to, and at the time of, its execution, including the attention and treatment given him by his sons and the effect the same had, or was calculated to have, on his mind and feelings toward them, also including the relations existing between the testator and Mrs. Glennie, and the effect the care and treatment given him by her had, or was calculated to have, on his mind and feelings toward her.  *Foster's Exrs.* v. *Dickerson,* 64 Vt. 233, 24 Atl. 253; *In re Barney's Will,* 71 Vt. 217, 44 Atl. 75.  However the jury might view the will in this respect, in the circumstances it had a bearing on the issues of mental capacity and undue influence.  *Denny* v. *Pinney's Heirs,* 60 Vt. 524, 12 Atl. 108.  It was therefore important for the contestant to show that he did not illtreat his father, if such be the fact. The competency of the witness was not challenged and, nothing appearing of record to the contrary, it is assumed, in support of the ruling, that she stated, so far as was practicable, the facts and circumstances on which her opinion or conclusion was based. We think the question here presented is governed, not by the general rule, but by the exception thereto stated by Judge Peck in *Bates* v. *Sharon,* 45 Vt. 474, and reiterated in *State* v. *Marsh,* 70 Vt. 288, 40 Atl. 836, as being well stated:  ''Where the facts

are of such a character as to be incapable of being presented with
their proper force to any one but the observer himself, so as to
enable the triers to draw a correct or intelligent conclusion from
them without the aid of the judgment or opinion of the witness
who had the benefit of personal observation, he is allowed, to a
certain extent, to add his conclusion, judgment, or opinion.''
Substantially the same legal question was ruled in the Marsh
case.   There it was held not error to permit a witness to state,
when asked what he observed in respect to the conduct of the
respondents toward each other on a certain occasion, that he ''ob-
served they were very intimate.''   And in *Mckee* v. *Nelson*, 4
Cow. 355, 15 Am. Dec. 384, a breach of promise case, where a
ruling was upheld permitting certain witnesses living in the
same house and constantly associating with the plaintiff as a
member of the family, and from an attentive observance of the
whole deportment during the courtship, to state their opinion
that the plaintiff was sincerely attached to the defendant.

The contestant called as a witness one Mr. Chamberlin who,
it appeared, had visited the testator at his home both before and
after proponent Glennie went there to live.   The witness testi-
fied that he did not make such visits as much after she went
there as before, and that there was a reason why.   Being asked
to state the reason, he answered, subject to exception on the
ground that there was no evidence as to who locked the doors,
and as having no bearing on the testator's mind, that sometimes
he would find the door locked and no one would open it.   There
was evidence that Mrs. Glennie had charge of the house at this
time, was running it, and that the testator was not in condition
to answer calls at the door.   Though seemingly not of much
force, we cannot say the evidence did not have some bearing on
the question of undue influence.

Probate Judge Martin, a witness called by the contestant,
testified in direct examination with respect to what took place
in the probate court at the time of the hearing on the petition
for the appointment of a guardian.   He stated that the testator
was asked where Edward Deavitt's office was.   ''Q. And what
was his reply?  Ans. Well he was unable to tell where it was.''
This answer being objected to as not the reply, the witness said:
''I cannot tell you the exact words.''   The answer being further
objected to as but a conclusion, the court told the witness to state
it in substance.   The answer then given was ordered stricken

out; and the witness was asked to state the substance of what the testator said when he was asked where Deavitt's office was. He answered: ''Well, sir, I can't—I wouldn't—I don't know that I can put it into—where he located it—I don't suppose; I couldn't tell you now where he located it.'' In answer to another question, the witness stated that the testator did not locate Deavitt's office correctly. Except as here stated, the witness did not at any time testify to what he heard the testator say on that occasion in respect to Deavitt's office. Further testifying concerning the same occasion, the witness was asked whether the testator or his counsel made any objection to the appointment of a guardian. Objection being made, counsel for contestant stated, ''I do not offer to show what they said. I offer to show that they did not say anything''; further stating they claimed that it was an act on the part of the testator which was admissible the same as all evidence of his acts where he realizes his condition; and that it confirmed the testimony of the contestant that the testator stated that he wanted a guardian appointed, when they had the talk in the garden some two or three weeks before. Subject to exception on the ground that there was nothing in that act which was inconsistent with full testamentary capacity of the testator, the witness answered, in effect, that during the hearing the testator made some very loud talk, but could not say whether it was by way of objection or not; that after the evidence was all in he was very calm and made no objection. The adjudication of the probate court on the petition, and the appointment of a guardian were matters proper for record, and could be proved only by the record. *Holden* v. *Scanlin*, 30 Vt. 177. Such proof was made in this case, and the certified copy is before us as a part of the exceptions. Therefrom it appears that Elwin J. Clogston, the contestant, was the petitioner; and the entry of judgment is (following the date of hearing), ''After hearing all the evidence produced on behalf of the petitioner and of the petitionee, it is considered and adjudged,'' etc. This is conclusive that evidence was introduced on behalf of each party to the proceedings; and the only reasonable construction is that the evidence introduced by the petitionee was in opposition to the appointment of a guardian. Such opposition by the testator being shown by the record, how can the fact offered to be shown by parol (that he did not say anything) be inconsistent with his having full testamentary capacity? Not

only this, but on what principle can the observance by him of proper decorum in the probate court while his case was there on trial, be taken as an admission of any thing other than the supremacy of the law and the power of the court having jurisdiction of such procedings? The evidence offered was inadmissible for the purposes named, and should have been excluded.

In redirect examination this same witness was asked: ''Now, from what you heard him (testator) say there (referring to same occasion) with reference to Edward Deavitt's office, and this loud talk that you have testified to, basing your answer on that, what do you say as to whether he was of sound or unsound mind, basing your answer upon what you have testified here?'' Subject to exception on the ground that the question was not proper, the witness answered, ''I should say he was of unsound mind.''

The last part of the question does not broaden the basis of the answer elicited. ''What you have testified here,'' relates back to what is specified as the basis of the answer in the early part of the question, namely, what the witness heard the testator say on the occasion mentioned, with reference to Deavitt's office, and his loud talk. But the witness stated more than once that he could not tell what he heard the testator say with reference to Deavitt's office, nor the substance of it. Thus this non-expert witness was permitted to express his opinion, based in part on something not testified to by him in court, and thereby harmful error was committed. *Londonderry* v. *Fryor*, 84 Vt. 294, 79 Atl. 46; *In re Bean's Will*, 85 Vt. 453, 82 Atl. 734. It is to be noticed that the answer was to be based in this respect on what the witness heard the testator say, not on the manner of his saying it, nor on his appearance or actions in connection therewith, observed and stated by the witness. The case is therefore unlike that of *Cram* v. *Cram*, 33 Vt. 15; *Foster's Exrs.* v. *Dickerson*, cited above; *In re Smith's Will*, 88 Vt. 259, 92 Atl. 223.

Contestant's brother Burt, as his witness, had testified to a statement made by the testator to the witness subsequent to the execution of the will and the appointment of the guardian, to the effect that he, testator, just as lief shoot Elwin as shoot a dog. Thereupon, against proponents' objection and exception as immaterial, the witness was permitted to testify that he informed contestant of this statement. But we think this evidence was in

the proponents' favor. Its tendency was to show that, to the contestant's knowledge, he was not looked upon favorably by his father, and so it affected the credit to be given to contestant's testimony that there was great family affection between them. The exception is not sustained.

The evidence of the proponents tended to show that the testator had stated many times, both before and after the will was made, that he had given his two sons a large farm with stock. The contestant offered evidence tending to show that his father deeded to him and his brother the farm as the father had stated, but that they worked without wages about nine years helping the father carry on the farm, and that, if they had been allowed proper wages, their wages would have equalled the value of the farm. The son Burt testified in cross-examination that when his father bought that farm, the witness was seventeen years old. He was then asked if his father was not entitled to four years of the nine years they were running the farm? Objection being made, this question was excluded and exception saved. Without evidence to this effect being introduced by the proponents, the jury might reason that the testimony on the part of the contestant, that if they (sons) had been allowed "proper wages," conveys the idea, inferentially, that their time was their own (as it might be by gift or purchase from the father), and that "proper wages" means such compensation as they were, in the circumstances, entitled to receive for the services rendered under hire. The manifest purpose of the inquiry was to refute such an inference, and the exclusion of the question was prejudicial error. See *Comstock's Admr.* v. *Jacobs*, 84 Vt. 277, 78 Atl. 1017, Ann. Cas. 1913A, 679.

Patrick Connolly, a policeman, called as a witness by contestant, testified in direct examination that there was a time when proponent Glennie's daughter came and wanted an officer to go to the testator's house. The witness was then asked, "What did she say?" The question being answered responsively, the proponents moved to strike out the answer, and excepted to the overruling of the motion. This exception was not well taken. *Ford* v. *Hersey*, 92 Vt. 405, 104 Atl. 875.

The proponents made two requests to charge respecting the effect, as evidence, of the subsequent adjudication by the probate court that the testator "is insane and mentally incapable of taking care of his property and of himself", and appointing a

guardian over him.   An exception was taken to the court's failure to charge as thus requested, and also to the charge as given on that subject.   The exceptions to the noncompliance with the requests are waived, not being briefed.   Charging upon the subject, the court said, among other things, "that adjudication being made after this will was executed, is not *prima facie* evidence that Mr. Clogston was mentally incapable of making a will at the time this will was signed."   To this extent, at least, there can be no doubt of the soundness of the charge as given, and since a part of the charge covered by the exception is without fault, the exception is not sustainable.   *Usher* v. *Severance,* 86 Vt. 523, 86 Atl. 741; *State* v. *Shaw,* 89 Vt. 121, 94 Atl. 434, L. R. A. 1915F, 1087.

The court was requested to instruct the jury further that it was proper for them to take into consideration that the comfort of the weak, the dependent, and the aged, depends largely on their testamentary capacity being maintained, and that if they cannot leave property to persons kind to them, they may often be left to suffer from want of kindness, and excepted to the noncompliance therewith.   Very likely this might properly have been urged in an argument to the jury by counsel, but there was no occasion for its being made prominent by the court.

The court very pointedly impressed upon the minds of the jurors that they were to determine the mental condition of the testator at the time when the instrument in question was signed, and in so doing they had a right to consider all the evidence before them as to the testator's condition both before and after that day, for the reason that capacity to make a will, at the time of making the one in question, "may be inferred from the soundness or unsoundness of mind found to exist within a reasonable time before and after the time in question."   The transcript of the evidence is not before us, and whether the substance of all the evidence bearing on this question is shown by the exceptions does not appear.   Therefore error in this part of the charge does not appear.   Mr. Greenleaf says: "In the *proof of insanity,* though the evidence *must relate to the time of the act* in question, yet evidence of insanity immediately before or after the time is admissible."   2 Greenl. Ev. Sec. 690.   To the same effect is the holding in *Crocker* v. *Chase,* 57 Vt. 413.

Exception was taken to the court's telling the jury that the matter of Mrs. Glennie's services subsequent to the making of

the will is not to be considered. It is enough to say of this exception that we find no statement in the charge to which it reasonably points.

In the course of its charge the court told the jury that, as had been said to them by contestant's counsel in the argument of the case, this is not a collection suit; to which an exception was noted. This statement by the court, not germane to the case, was well calculated to prejudice the minds of the jurors against the proponents' case in view of the services shown to have been rendered by Mrs. Glennie for the testator before the will was made and afterwards, which had a strong bearing on the naturalness of the will. On exception being taken thereto, the court, evidently realizing the prejudice the objectionable statement might have created, directed the jury to disregard the expression. We do not consider whether, notwithstanding this last direction, the prejudice was likely to remain; for the case being remanded on other grounds, this particular error is not likely to recur on another trial.

*Judgment reversed, and cause remanded.*

MILES, J., dissenting. For several reasons I cannot agree with my Associates in the disposition made of proponents' tenth exception.

(1) The record shows no objection or exception to the question to Judge Martin which was answered, nor to the answer given to that question, and for verification of this statement, I quote below all that appears in the record before us upon that exception, which is as follows: "Q. Now, was there any objection by Mr. Clogston (the testator) or his counsel to the appointment of a guardian? (Objected to.) Laird: We claim that Mr. Theriault has testified that he made this will and this deed, which was four or five weeks before the guardian was appointed, and that Mr. Clogston was in sound mind and able to do business. Now later he appears in probate court with counsel and no objection is made to the appointment of a guardian. We claim that, to a certain extent, weakens Mr. Theriault's testimony that he was of sound mind four weeks previous to that time. Shurtleff: We claim this for it: This was a declaration, this was an act of Mr. Clogston's, whether he objected or did not object to the appointment of a guardian, and comes in the same as all this evidence has of his acts, particularly this where

he realized his condition.   Laird:   And we further claim that it confirms the testimony of Elwin Clogston that Mr. Clogston stated that he wanted a guardian appointed when they had the talk in the garden some two or three weeks before.   I do not offer to show what they said.   I offer to show that they did not say anything.   (Objected to, there being nothing in that act that is inconsistent with full testamentary capacity of J. D. Clogston. Admitted  subject  to  exception.)   Q.   Whether  Mr.  Clogston on that occasion made any objection to the appointment of a guardian, as you remember?   A.   He didn't after the evidence was all in.   There was, he made, he used some very loud talk during the—I can hardly say whether it was in the way of objection or what it was, but during the hearing he made some very loud talk, but I can't say whether that—whether you would say that was objecting or not; but when the evidence was in he was very calm and made no objection.''

The record shows, as appears above, that the first question was objected to and the objection was overruled, but no answer was taken.   The second question was asked and answer taken without objection to either and without exception to the answer. The majority base their holding upon the assumption that the second question was under objection and exception, upon the theory that the second question was a repetition of the first and brought with it the objection to the first and the ruling of the court upon that objection.   To my mind this is not a correct conclusion.   The two questions are very dissimilar.   The first was offered to weaken the testimony of Theriault, who had testified that at the time the will was executed the testator was of sound and disposing mind, by showing that four or five weeks after the will was executed Theriault, appearing as attorney for the testator at the hearing for the appointment of a guardian, made no objection to such appointment; and, second, it was offered to corroborate the testimony of the contestant; and, third, it was offered as an act and declaration of the testator. It cannot be denied but that the offer made by Laird was applicable to the first question and not to the second; for, if proved, it had no tendency to show the testator's state of mind, but simply to affect the weight to be given to Theriault's testimony. The offer of Shurtleff was not applicable to the first question; for that called for the act and declaration of Theriault as well as that of the testator.   In these circumstances it is evident

that counsel for the contestant, not feeling certain that the ruling of the court was sound, decided not to take the answer to the first question, but to change the question so as to avail themselves of the benefit of both offers, by dividing the question objected to into its component parts, and the second question was one of those parts.   While we can all agree that the whole is equal to all its parts, I cannot agree that one of the parts is equal to the whole, and hence I maintain that the second question is not a repetition of the first; the second simply calling for an act or declaration of the testator alone.   The second question eliminates that portion of the first question to which Laird's offer relates and upon which the ruling of the court, at least, was in part made.   This in itself, to my mind, is a sufficient answer to the claim of the majority that the second question was a repetition of the first.

(2)   There was no error in the ruling of the court below upon the question under the offer made.   It was legitimate to show Theriault's act at the hearing before the probate court as affecting the weight to be given to his testimony on the trial in county court.   His failure to object to the appointment of a guardian for the testator, for whom he was appearing as attorney, the testator then and there being charged with being "insane and mentally incapable of taking care of himself and property", being unexplained, had a tendency to affect the weight of his testimony on the trial of this case in county court that the testator was of sound and disposing mind at the time the will was executed four or five weeks before; and, notwithstanding that the further offer to show a declaration of the testator, as bearing upon his then mental condition, was coupled with that offer, it did not render the court's ruling erroneous; for, the offered evidence being admissible for one purpose, it was not error to receive it for that purpose.   *Comstock's Admr.* v. *Jacobs*, 89 Vt. 133, 94 Atl. 497; *Jenness* v. *Simpson*, 84 Vt. 127, 78 Atl. 886; *Tenney* v. *Harvey*, 63 Vt. 520, 22 Atl. 659.   If there was no error in the ruling of the court upon the objection to the first question, there can be no error claimed under this objection; for there was no other ruling made to which this exception can attach.   Looking at the objection made, it becomes clear to me that it was aimed at Laird's offer to show an act of Theriault's inconsistent with his testimony, or was aimed at Shurtleff's offer to show, by the combined act of Theriault and

the testator, mental incapacity of the testator. However this may be, it is clear that the objection cannot apply to the second question; for that has no tendency to affect the weight of Theriault's testimony, nor is it an attempt to prove the mental condition of the testator by the combined act of the testator and Theriault.

Assuming, however, for the purpose of considering the question, that the objection does apply to the second question and the declaration or act of the testator alone, the exception then is not well taken; for the acts and declarations of a testator made before and after the execution of a will, within a reasonable time, are admissible. Redfield on the Law of Wills. (3d ed.) Vol. 1, page 507 et seq.; In re Buckman's Will, 64 Vt. 313, 24 Atl. 252, 33 Am. St. Rep. 930; Crocker v. Chase, 57 Vt. 413; Robinson v. Hutchinson, 26 Vt. 38, 60 Am. Dec. 298. Whether the time intervening between the execution of the will and the act was too remote or otherwise was a question within the discretion of the trial court, and not revisable by this Court, if the discretion was reasonably exercised. State v. Barr, 84 Vt. 38, 77 Atl. 914, 48 L. R. A. (N. S.) 302; In re Smith's Will, 88 Vt. 259, 268, 92 Atl. 223; Green v. LaClair, 89 Vt. 346, 95 Atl. 499; Richardson v. Baker & Sons, 83 Vt. 204, 75 Atl. 151. The discretion was reasonably exercised in this case; only four or five weeks having intervened between the execution of the will and the offered act and declaration.

The apparent purpose of the second question was to get before the jury an act of the testator, and not for the purpose of proving the incompetency of the testator through the act itself, that the jury might judge from the act as an objective piece of evidence whether it was that of a man possessed of a sound and disposing mind or otherwise. It cannot be well said that Laird's offer to show that nothing was said by Theriault applies to the second question; for the second question has no reference to Theriault; nor can it be that it was an offer to show that the testator said nothing against the appointment of a guardian; for the question in connection with which the offer was made called for the joint act of Theriault and the testator, and not for the act of the testator alone. Hence the only purpose of the second question must have been to show the character of the act of the testator as stated above. Besides, the answer of the witness shows that counsel for the contestant could not have asked the

second question simply to prove that the testator said nothing. It is to be assumed that the witness was asked to testify to just what he did testify to, and that shows, unobjected to, that during the trial for the appointment of a guardian the testator made very loud talk, and this conduct is what the majority denominate, "the observance of proper decorum in the probate court." I hardly think that any one of my Associates really meant to be understood as holding that very loud talk during the trial of a cause in a court of justice by one of the parties was the "proper decorum" that should there be observed, but I fear the holding has that appearance, and that the casual reader, not taking into consideration the witness' further statement that after the trial the testator was calm, might so construe the holding, in view of the fact that that statement, being in the proponents' favor, would hardly justify a reversal. To me the answer of the witness described a man whose conduct was not that of a man with due appreciation of what was proper in the course of a trial in a court of justice. The fair interpretation of this testimony is that during the trial he was not "quiet and calm", but was very noisy, and his conduct, tested by that of suitors generally, bears the interpretation of one who is incapable of controlling his impulses and was highly proper to be considered by the jury upon the question of mental capacity to make a will at the time the will in question was made. He was noisy when he should have been quiet, and the fact that he was quiet after the case was closed has no significance whatever.

The objection which the majority say attaches to the second question was that there was nothing called for by the question inconsistent with full mental capacity. This objection rests upon the assumption that, to be admissible, the act of the testator must have been of a character tending to show incapacity only; but the general rule, as stated in the authorities hereinbefore cited, is that acts and declarations tending to show capacity as well as incapacity are admissible under like circumstances, and this is so general and universal that such an objection amounts to a general objection, raising no question, and might well be overruled by the court without incurring error.

(3) The error, if committed, was harmless, in view of the answer given. The majority base their holding upon the fact that the testator was calm and quiet after the hearing in the probate court had ended. That fact had a tendency, if any, to

support the proponents' claim rather than the claim of the contestant, and therefore benefited the proponents, and unless a misuse of it was afterwards made, which is not claimed in this case, they could not have been harmed by it.

Nor can I agree with my Associates that there was reversible error in receiving the answer of Judge Martin to the question: "Now, from what you heard him say there (referring to the same occasion) with reference to Ed. Deavitt's office and this loud talk that you have testified to, basing your answer on that, what do you say as to whether he was of sound or unsound mind, basing your answer on what you have testified to here?" The witness had testified to loud talk, and that the testator could not locate Deavitt's office, and the question asks for an answer based upon that. While the witness' opinion based upon that statement may not have had much weight upon the minds of the jury, yet it was sufficient as a basis for the opinion, and the objection went to its weight rather than to its admissibility.

The majority rely, in a measure, upon a statement in their opinion that the witness stated that he could not tell what he heard the testator say with reference to Deavitt's office nor the substance of it. I am unable to find in the record that the witness testified to just that. It is true that the witness said several times he could not tell the words the testaor said; but I can find no statement stronger than that. The witness did say that he could not tell where the testator did locate it, but that he could not locate it where the office in fact was. The fair construction of this evidence is in substance to the effect that the witness heard the testator locate the office in a place other than where in fact it was located. So construed, the basis of the error assigned by the majority fails. To sustain the judgment below such a construction should be given to the testimony, and to do so does not require a resort to the technicalities of a plea in abatement, but only a fair interpretation.

For another reason the exception is without merit. The ground of the objection was simply that it was not proper. This raised no question of law; for it cannot be said that in any view of the case apparent upon the record, it could not be admissible. The mere objection without the statement of any ground is equivalent to saying that the question is improper. No ground being stated, no valid exception is saved. *State* v. *Pierce*, 87 Vt. 144, 88 Atl. 740.

Neither can I agree with the majority that there was error in excluding the question asked the son of the testator on cross-examination, as follows: ''Well, he was entitled to four years of that nine years you were running the farm, wasn't he?'' The question was a legal one, and for that reason was properly excluded; besides, the witness had answered that he was seventeen years old when the nine years began. It was therefore apparent that the testator was by law entitled to four years service of the witness included in the nine years mentioned in the excluded question, and nothing would have been added for the consideration of the jury by receiving the answer, and its exclusion did not harm the proponents.

*I would affirm the judgment.*